## No. 13,888.

GOLDEN ET AL. *v.* PEOPLE EX REL. BAKER, DISTRICT
ATTORNEY.
(74 P. [2d] 715)

Decided March 22, 1937.   Rehearing denied December 20, 1937.

Mr. EDWARD AFFOLTER, for plaintiffs in error.

Mr. Herbert M. Baker, District Attorney, Mr. James D. Lewis, Deputy, Mr. Theodore D. Schey, Jr., on petition for rehearing, for defendant in error.

Messrs. Hodges, Wilson & Vidal, Mr. Berton T. Gobble, Messrs. Dines, Dines & Holme, Mr. Robert E. More, Mr. M. E. Shoup, Mr. Gerald W. Bennett, Mr. Ben S. Wendelken, Mr. Herbert E. Mann, Mr. Bentley M. McMullin, Mr. Edward V. Dunklee, Mr. Thomas H. Gibson, amici curiae.

*En Banc.*

Mr. Chief Justice Burke delivered the opinion of the court.

These parties appeared in reverse order in the trial court. Plaintiffs in error are hereinafter referred to as the town and defendant in error as the district attorney.

The district attorney brought injunction to restrain the town from issuing licenses for the retail sale of intoxicating liquor on the theory of the unconstitutionality of the statute purporting to authorize the issuance. The town's demurrer for want of facts was overruled, it elected to stand, and the writ was issued. To review that judgment it brings error.

■ The first contention is that this is not a case for injunction. Assuming the construction of the constitutional provision maintained by the district attorney, and considering that it provides no penalty for its violation, and is not therein aided by statute, we think he was without legal remedy and hence the suit was maintainable.

■ Newly elected officials have, notwithstanding the writ, issued the licenses. This fact is made the basis of a motion to dismiss the action as moot. In view of the public interest whereby the question has become state-wide and can only be put at rest by judgment here that motion must be denied. *Van De Vegt v. Commissioners,* 98 Colo. 161, 177, 55 P. (2d) 703, 710.

█ █ Article XXII of the state Constitution (S. L. '33, p. 390), adopted at the general election of 1932, repeals as of date June 30, 1933, all statutes relating to intoxicating liquors, and provides that from and after the following day the entire traffic shall be exclusively controlled ''by or through such agencies and under such regulations as may hereafter be provided by statutory laws of the State of Colorado; but no such laws shall ever authorize the establishment or maintenance of any saloon.'' Certain sections of the liquor code, being chapter 142, p. 597, S. L. 1935, appear to authorize the issuances of the licenses here in question. Section 1 of the act repeats the constitutional prohibition against the ''saloon,'' but section 4(a), p. 602, purports to define ''saloon,'' and this statutory saloon, it is said, is a thing entirely different from the saloon referred to in the Constitution, and is prohibited thereby. Such is the main question argued in the briefs. However, for reasons hereinafter stated, we feel constrained to dispose of this action on another ground which, in the nature of things, could not have been considered below.

Though the motion to dismiss, and the briefs thereon, came in much later, the last brief on the merits was filed herein June 6, 1936. At the general election, following, the ''Old Age Pension Amendment'' to the Constitution, known as Amendment No. 4, was adopted. Section 2 thereof allocates to the old age pension fund 85 per cent of all excise taxes ''now or hereafter levied upon the storage, use or consumption of any commodity or product,'' and more specifically by section 2(b), 85 per cent of ''all net revenues accrued or accruing, received or receivable'' from intoxicating liquor taxes ''of whatever kind.'' Section 5 thereof commands that no law providing revenue for the old age pension fund shall be repealed or amended unless, at the same time, substitute revenue in an equal amount be provided. We have heretofore upheld said amendment No. 4, and particularly

that portion thereof allocating revenues. *In Re Interrogatories of the Governor*, 99 Colo. 591, 65 P. (2d) 7.

Following the enactment by the General Assembly of said chapter 142 licenses therein provided for, similar to those here in question, were issued and "saloons," if such they be, established thereunder have since been operating generally throughout the state. Thus the revenue raising provisions of said chapter 142 were incorporated into, and are now a part of, the Constitution, with the result that said article XXII has been modified as to its prohibition against the establishment and maintenance of any saloon, and those places here in question which had provided, and were providing, such revenue were legalized.

To hold otherwise would take from the old age pension fund approximately one million dollars now allocated to it by said amendment No. 4, as construed by this court in *In re Interrogatories of the Governor, supra*, with no revenue substituted therefor and no constitutional obligation on the legislature to provide such. This seems clearly contrary to the purpose and intent of said amendment No. 4 and its specific language. The fact, if it be a fact, that the licensing provisions of said chapter 142, here involved, were, prior to the passage of the Old Age Pension Amendment, unconstitutional, is now immaterial. It had not been so declared and all presumptions were in its favor. Moreover, the people, if they so desire, may write into their Constitution any provision they wish which does not conflict with the Constitution of the United States. That power is in no way impaired by the fact that the proposed amendment was or was not theretofore statutory, or, if statutory, valid or void.

In our opinion said amendment No. 4 did not let down the bars for legislative authorization of any kind of establishment save those then authorized by said chapter 142. Such only were producing, or presumably would in the future produce, "excise taxes" and "net revenues." Such taxes and revenues were the only proceeds

allocated to the old age pension fund and to that extent only was the prohibition of article XXII repealed or suspended. The people, in adopting that act, merely accepted a status then known to all to exist.

Our holding therefore is that assuming, but not deciding, that the places for which the licenses here in question were to be, or were, issued, are saloons within the prohibition of said article XXII, that clause was thus far repealed, or its operation suspended, by said amendment No. 4.

Since this question was not, and could not be argued by counsel the prohibitions of our Rule 48 do not apply to a petition for rehearing herein. Expedition appearing necessary motion and briefs, if any, may be in typewriting.

The judgment is reversed with directions to dismiss.

MR. JUSTICE HILLIARD, MR. JUSTICE YOUNG and MR. JUSTICE BAKKE dissent.

MR. JUSTICE HILLIARD, dissenting.

I am impelled to dissent because, in my judgment, the court has indulged in two fallacies: First, in holding that the Old Age Pension Amendment repeals article XXII of the Constitution to the extent that it authorizes, indeed, requires, that there shall be saloons; second, as a consequence of the first, that it is unnecessary to determine whether the licensed places are "saloons" within the meaning of that word as used in the article. If the first premise is wrong, and it is clear to me that it is, our duty boldly to determine the second question should not be evaded. It is too much to hope that the court has solved the grave moral and social problems involved in the issues before us by the opinion rendered. That opinion, I respectfully submit, is oversimplified, and will revive what the people thought had been settled by article XXII. What really is here to be decided is

whether there may be saloons. The trial court said there should not.

Article XXII was adopted at the general election of 1932. It reads: "On the thirtieth day of June, 1933, all statutory laws of the state of Colorado heretofore enacted concerning or relating to intoxicating liquors shall become void and of no effect; and from and after July 1st, 1933, the manufacture, sale and distribution of all intoxicating liquors, wholly within the state of Colorado, shall, subject to the Constitution and Laws of the United States, be performed exclusively by or through such agencies and under such regulations as may hereafter be provided by statutory laws of the state of Colorado; but no such laws shall ever authorize the establishment or maintenance of any saloon." S. L. '33, c. 52. In 1935 the General Assembly enacted chapter 142, S. L. 1935, of which the following quoted sections are a part: Section 1. "This act shall be deemed an exercise of the police powers of the state for the protection of the economic and social welfare, the health and peace and morals of the people of this state, but no provisions of this law shall ever be construed so as to authorize the establishment or maintenance of any saloon." Section 4(a). "For the purpose of this act any place selling malt, vinous or spirituous liquors by the drink not in full conformity with this act is a saloon. Any place selling malt, vinous or spirituous liquors in any manner whatsoever but under full compliance with the provisions of this act is not a saloon." Section 4(m). " 'Hotel' means any establishment provided with 20 or more sleeping rooms under one roof for the accommodation of guests and having a dining room and/or restaurant in connection therewith and directly accessible by an entrance from within the hotel * * *." Section 4(n). " 'Restaurant' means an establishment provided with special space and accommodations, where in consideration of payment, meals are habitually furnished to guests, and whose principal business is the sale of meals

and in which room nothing is sold excepting meals, food, drinks, and tobaccos, and where malt, vinous and spirituous liquors shall not be served at any place, excepting tables and lunch counters with stools securely fastened to the floor. Any establishment connected with any business whatsoever wherein any business is conducted, excepting the sale of meals, foods, drinks and tobaccos, or hotel business, is hereby declared not to be a restaurant, and any hotel not maintaining a restaurant regularly provided with special space and accommodations where meals are habitually furnished to guests is likewise declared not to be a restaurant." Section 19. "Beer and Wine License. The license permitted by this section and which is issued and granted to sell malt and vinous liquors in the place where the same is to be consumed, shall be confined to hotels and restaurants, except as provided by this section, as defined by this act and shall authorize the licensee only: (a) To sell malt and vinous liquors to customers for consumption on the premises. * * *" Section 20. "Hotels and Restaurant License. Hotels and restaurants, as defined by this act, may, in addition to the privileges provided in section 19, of this act: (a) Restaurants, as defined by this act, may sell spirituous liquors by the drink only to customers for consumption on the premises, but only in the room or rooms where meals are served and only with meals, except that hotels as defined by this act may sell malt, vinous and spirituous liquors by the drink only to customers of said hotel, and the same shall be served at tables with food."

Article XXII says there shall be no saloons. Section 1 of the 1935 act likewise forbids them. The prime inquiry is whether the legislature, despite its protestations, has transgressed the Constitution. What is a saloon? What does article XXII mean when it expressly commands that "* * * no * * * laws shall ever authorize the establishment or maintenance of any saloon"? If we shall advisedly make answer we know there is no war-

rant for interpretation now, either at our hands or by the legislature. Article XXII was adopted by the people in the light of the meaning of the word saloon as it had been theretofore defined, for "when the framers of the constitution employ terms which in legislative and judicial interpretation have received a definite meaning and aplication, * * * it is a safe rule to give to them that signification sanctioned by legislative and judicial use." 12 C. J. 706. See *Daily v. Swope*, 47 Miss. 367, 383; *Cruger v. Hudson River R. Co.*, 12 N. Y. 190; *Jenkins v. Ewin*, 8 Heisk. (Tenn.) 456. The legislative definition of a grocery [saloon] was enacted in 1861 (G. L. 1861, p. 71, §12) and remained unchanged until all sales of intoxicating liquors were prohibited in 1916. See Territorial Act 1862, p. 78; R. S. 1868, p. 462, §12; G. L. 1877, §1629; G. S. 1883, §2107; R. S. 1908, §3996. A saloon, that act provided, was a place "where spirituous liquors are retailed [sold] by quantities less than one quart." Here, it will be observed, we do not find the refinements of 20 sleeping rooms, or lunch counters with fastened down stools, or service only at tables with food. Nor in the decisions of this court upon the subject are we left in doubt. "One of the definitions of saloon found in the New Century dictionary is 'a place where intoxicating liquors are sold and drunk; a grog shop.' In our own statutes is found the following: 'A saloon * * * shall be deemed to include all places where spirituous or vinous liquors are sold by quantities less than one quart.' " *Cardillo v. People*, 26 Colo. 355, 359, 58 Pac. 678. "A restaurant where intoxicating liquors are kept and habitually sold to the public in small quantities * * * is * * * a 'saloon * * *' ''. *Lendholm v. People*, 55 Colo. 467, 136 Pac. 70. Whether a restaurant is such "* * * depends upon the character of the business that is carried on therein * * *." *Scanlon v. City of Denver*, 38 Colo. 401, 88 Pac. 156. "The name by which a place is called does not, in law, fix its status. The character of a place, what it really is, is fixed and determined by

that which habitually takes place therein. If the place be open to the public to whom meals are regularly served, it is an eating saloon; but if intoxicating liquors are likewise so habitually served therein, it is also a drinking saloon * * *. The test of the character of the place cannot be: What is its principal business, but what business is there habitually carried on? If it consists, in whole or in part, of habitually selling intoxicating liquors in quantities less than one quart, to the public generally, it is a saloon * * *. It is admitted that defendants had a license to sell liquors in less quantities than one quart in the Mozart Cafe [a restaurant], and habitually made such sales therein. The legislative pronouncement is, that such places are saloons * * *. Moreover, the evil of permitting people to congregate in places of public resort and indulge in drinking of intoxicating liquors * * * is not lessened by the fact that in restaurants patrons are able to obtain food as well as liquor and may be seated while they drink." *Lendholm v. People, supra.* "The evil intended to be prohibited * * * consists in keeping open a public house where liquor is sold in small quantities, and the opportunity is given to purchasers to drink it on the premises." *Harris v. People,* 21 Colo. 95, 98, 39 Pac. 1084. The conception in Colorado of a saloon, therefore, admits of no doubt, and indeed, is that generally entertained by lexicographers and other authorities. Are we then to believe that when article XXII forbade "any saloons" the people left room for construction? No. If emphasis were needed, the word "any" supplied it, for "any has the meaning of 'all' or 'every,' 'each,' 'each one of all,' 'without limitation.' " 3 C. J. 232. Considering the legislative interpretation and judicial pronouncements through the years, and noticing, as we judicially may, the history of laws upon the subject, the trial court was entirely right in forbidding the issuance of licenses for the sale of intoxicating liquors by the drink for consumption on the premises. I am persuaded, and believe, that upon this point the

court is of like opinion, that any place where intoxicating liquors are so sold and consumed is a saloon and within the inhibition of the Constitution.

But, the court says, we need not determine that question, for the Old Age Pension Amendment, *by implication,* repeals that part of article XXII which forbids establishment of saloons. No attempt is made to reconcile the two amendments; no effort is made to determine the intent which moved the people to adopt them; and no reference is made to the many decisions of this court and to other authorities on the subject which, I submit, demonstrate the unsoundness of the opinion. Repeals by implication are regarded with disfavor; they are never indulged if the enactments can both be so construed as to stand; and particularly they will be rejected when the earlier provision is founded in experience and grave considerations of public welfare. *Harrington v. Harrington,* 58 Colo. 154, 144 Pac. 20; *Hogg v. Commissioners,* 57 Colo. 463, 141 Pac. 478; *People v. Commissioners,* 86 Colo. 249, 281 Pac. 117. The gravamen is the intent of the people in adopting the Old Age Pension Amendment. Will the court say directly what it has necessarily inferred, that when the people voted for the Old Age Pension Amendment they intended to allow a saloon on every corner, and to forbid the legislature to close the saloons no matter what conditions might come to surround them? If the revenue from saloon licenses is so sacred that saloons may not be forbidden by the legislature (and the auditor of state informs me that the revenue to the state from *saloons* is $26,000 annually and not the million dollars the court asserts will be lost), any law that interferes with liquor revenues is obnoxious. If this consideration is to control, then Sunday closing laws, sales to minors, sales to those who have already bought too much, must also be repealed, and a desire for intoxicants on election days will not be thwarted. Are these the things the people decreed should result from their favorable vote for pensions for the aged?

An even more inherent error in the opinion of the court is the holding that no matter how unconstitutional the licensing provisions of chapter 142, S. L. 1935, may have been when enacted—and apparently the court believes them to have been then unconstitutional—the Old Age Pension Amendment validates those provisions. No sanction for that pronouncement will be found in the law. An act of the legislature not authorized by the Constitution at the time of its passage is void, and a subsequent amendment authorizing such an act does not give it validity, much less one which endeavors to forbid its repeal. "An act of the legislature which is not authorized by the state constitution at the time of its passage is absolutely null and void. It is. a misnomer to call such an act a law. It has no binding authority, no vitality, no existence. It is as if it had never been enacted, and it is to be regarded as never having been possessed of any legal force or effect. * * * The act being void, no subsequent adoption of an amendment to the constitution, authorizing the legislature to provide for such investment, would have the effect to infuse life into a thing that never had any existence * * *." *State v. Tufly,* 20 Nev. 427, 22 Pac. 1054. The question to be determined is not whether said chapter 142 is constitutional because of the Old Age Pension Amendment, but whether it had validity when it was enacted in 1935. A decision of Judge Cooley directly determines the point in this language: "The legislature of 1873 had no power, under the constitution as it then was, to authorize such licenses, and it is not presumable that any unconstitutional power was intended to be exercised in granting the charter. But if the charter at that time did not confer or attempt to confer the authority, neither does it do so now. The meaning of the charter is the same today that it was when adopted, and it cannot be affected and enlarged by any subsequent change of the constitution. The intent to be sought for in the charter is the intent of the body which passed it, namely, the legisla-

ture of 1873; and that was clearly not an intent to authorize the licensing of sales of intoxicating drinks." *Dewar v. People,* 40 Mich. 401. See, also, *Mount Pleasant v. Vansice,* 43 Mich. 361; *State v. Ellis,* 22 Wash. 129, 60 Pac. 136; *Banaz v. Smith,* 133 Cal. 102, 65 Pac. 309.

It is my opinion that the judgment below was right and should be affirmed.

MR. JUSTICE YOUNG and MR. JUSTICE BAKKE concur in this opinion.