Ronald Dee BECK, Individually and as Independent Executor of the Estate of Audrian L. Beck, Deceased, Petitioner,

v.

Lillian M. BECK, Respondent.

No. D–0272.

Supreme Court of Texas.

May 30, 1991.

Rehearing Overruled Sept. 11, 1991.

James M. Morris, Robert W. Minshew, Sherman, for petitioner.

Richard Harrison, Staci Johnson, Sherman, for respondent.

OPINION

CORNYN, Justice.

This is a suit to determine the enforceability of a premarital agreement, entered into in 1977, under section 5.41 of the Tex-

as Family Code[1] and article XVI, section 15, of the Texas Constitution. The trial court granted summary judgment to Lillian Beck, holding that the premarital agreement at issue was enforceable under the 1948 amendment to article XVI, section 15, of the Texas Constitution.[2] The court of appeals affirmed the trial court's judgment. 792 S.W.2d 813. We affirm the judgment of the court of appeals, but for different reasons.

Audrian and Lillian Beck entered into a premarital agreement on October 27, 1977, pursuant to section 5.41(a) of the Texas Family Code,[3] which purported to authorize premarital agreements. Lillian's attorney drafted the agreement. Audrian's attorney reviewed the agreement, which Audrian and Lillian executed in his office. Paragraph four of the agreement provides:

> Notwithstanding that under the laws of the State of Texas the income from respective separate properties of Audrian and Lillian will be community property, they hereby agree that all the properties of every kind and nature, real and personal, held or standing in the name of only one of them shall be considered as a separate property of the one of them in whose name such property is held or stands, and that only properties, whether real or personal, held or standing in their joint names shall be considered as community property.

Audrian died on March 3, 1981. His will was admitted to probate on April 10, 1981. The probate court issued letters testamentary to Ronald Beck, Audrian's only child by a previous marriage, and appointed him independent executor of Audrian's estate.

Ronald, in both his individual capacity and in his capacity as independent executor of Audrian's estate, brought suit in the district court against Lillian on March 2, 1984. In his first amended petition, he requested, among other things, a declaratory judgment that the premarital agreement was unenforceable under the 1948 amendment to article XVI, section 15, of the Texas Constitution. The underlying dispute between Ronald and Lillian is whether Audrian's estate owns a one-half interest in the income generated by Lillian's separate property. The disputed property includes income from rental properties and bank accounts, as well as "income and earnings from [Lillian's] separate estate."

In the trial court, Ronald and Lillian both filed motions for partial summary judgment on the issue of the enforceability of the premarital agreement under the Texas Constitution. The trial court granted Lillian's motion for summary judgment. The court of appeals affirmed, holding that the agreement was enforceable under the 1948 amendment to article XVI, section 15, as an "exchange" of each spouse's community interest in future income from separate property. 792 S.W.2d at 816.

The 1948 amendment to article XVI, section 15, of the Texas Constitution provided:

> All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband; provided that husband and wife, without prejudice to pre-existing creditors, may from time to time by written instrument as if the wife were a feme sole partition between themselves in severalty or into equal undivided interests all or any part of their existing community property, or exchange between themselves the community interest of one spouse in any property for the

---

1. Act of May 14, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex.Gen.Laws 2707, 2729, *amended by* Act of June 15, 1973, 63rd Leg., R.S., ch. 577, § 31, 1973 Tex.Gen.Laws 1596, 1608 (current version at Tex.Fam.Code Ann. §§ 5.42, .43, .56 (Vernon Supp.1991)).

2. Tex. Const. art. XVI, § 15 (1876, amended 1948).

3. "Before marriage, persons intending to marry may enter into a marital property agreement as they may desire." Act of May 14, 1969, 61st Leg., R.S., ch. 888, 1969 Tex.Gen.Laws 2707, 2729, *amended by* Act of June 18, 1987, 70th Leg., R.S., ch. 678, 1987 Tex.Gen.Laws 2530, 2531–32 (current version at Tex.Fam.Code Ann. §§ 5.42, .43, .56 (Vernon Supp.1991)).

community interest of the other spouse in other community property, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property of such spouse.

This court construed the 1948 amendment in *Williams v. Williams,* 569 S.W.2d 867 (Tex.1978). We stated that any agreement attempting to recharacterize income or property acquired during marriage as separate property was "void" under article XVI, section 15, of the Texas Constitution. *Id.* at 870.

■ The court of appeals held that we construed only the "partition" language of the 1948 amendment in our decision in *Williams* and did not reach the issue of whether the agreement could be upheld as an "exchange" of each spouse's community interest. We disagree. In *Williams,* we simply stated that the premarital agreement violated the Texas Constitution and did not distinguish between a "partition" and an "exchange" of property. *Id.* Therefore, the court of appeals' holding, based on the distinction between a "partition" and an "exchange," was erroneous.

Having determined that the premarital agreement is unenforceable under the 1948 amendment, we must decide whether the retroactive application of the 1980 constitutional amendment to article XVI, section 15, of the Texas Constitution can uphold the premarital agreement. The 1980 amendment specifically provided in pertinent part:

> provided that *persons about to marry and spouses* ... may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired....

Tex.H.R.J.Res. 54, 66th Leg., R.S., 1979 Tex.Gen.Laws 3227, 3227.

Ronald contends that the premarital agreement at issue is not enforceable under *Williams.* Lillian argues that we can apply the 1980 amendment because it was the law in effect when the trial judge rendered judgment. *See Sadler v. Sadler,* 769 S.W.2d 886, 886 (Tex.1989); *Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Daniel v. Daniel,* 779 S.W.2d 110, 113 n. 3 (Tex. App.—Houston [1st Dist.] 1989, no writ). We agree with Lillian that the agreement is enforceable, but for different reasons.

■ This court has previously held that the legislature has the power to cure statutes that are invalid under the Texas Constitution by proposing a constitutional amendment that is adopted by the citizens of Texas. *Hutchinson v. Patching,* 103 Tex. 497, 129 S.W. 603 (1910). By passing a constitutional amendment that specifically refers to the invalid statute, the legislature can expressly validate not only the statute, but all actions taken in reliance on the validity of that statute. *Id.* at 501–02, 129 S.W. at 605; *accord Ex parte Southern Ry. Co.,* 556 So.2d 1082, 1090 (Ala. 1989); *Fullam v. Brock,* 271 N.C. 145, 155 S.E.2d 737, 741 (1967); *Red Rover Copper Co. v. Industrial Comm'n,* 58 Ariz. 203, 118 P.2d 1102, 1105 (1941); *People ex rel. McClelland v. Roberts,* 148 N.Y. 360, 42 N.E. 1082, 1085 (1896).

■ The legislature may also impliedly validate an invalid statute by passing a constitutional amendment to cure it. This power is termed the doctrine of implied validation. It permits a constitutional amendment to impliedly validate a statute that was originally beyond the legislature's power to enact if it does not impair the obligation of a contract or impair vested rights. Annotation, *Removal or Suspension of Constitutional Limitation As Affecting Statute Previously Enacted,* 171 A.L.R. 1070, 1072–73 (1947). Several courts in other jurisdictions have adopted the implied validation doctrine. *E.g., Paluck v. Board of County Comm'rs,* 307 N.W.2d 852, 855 (N.D.1981); *Matthews v. Quinton,* 362 P.2d 932, 938–39 (Alaska 1961); *Golden v. People ex rel. Baker,* 101 Colo. 381, 74 P.2d 715, 716 (1937). No court in this state has adopted the doctrine, although one commentator has proposed it

as a potential basis for retroactively applying our 1980 constitutional amendment to uphold premarital agreements entered into under section 5.41 of the Texas Family Code. McKnight, *The Constitutional Redefinition of Texas Matrimonial Property As It Affects Antenuptual and Interspousal Transactions*, 13 St. Mary's L.J. 449, 474–75 (1982) [hereinafter McKnight].

■ In deciding whether the 1980 amendment to article XVI, section 15, of the Texas Constitution impliedly validated section 5.41 of the Texas Family Code and all agreements entered into pursuant to this statute, we must first ascertain whether the legislature intended to apply the amendment retroactively. *See* McKnight at 475. To do so, we look to the language of the amendment, its legislative history, its purpose and the circumstances of its enactment. *Cf.* Tex.Gov't Code Ann. § 311.023 (Vernon 1988) (Statute Construction Aids).

The language of the statute itself is silent regarding any intended validation of section 5.41 or premarital agreements executed before 1980. However, the legislative history of the amendment, its purpose and the circumstances of its enactment persuade us that the legislature intended to cure section 5.41 and validate contracts entered into before the amendment became effective.

The legislative history of the 1980 amendment is enlightening. In a public hearing on House Joint Resolution 54,[4] held on February 28, 1979, before the House Committee on Constitutional Amendments, one witness testified:

> The idea here is just to make it a simple change *to allow people to do what they wanted to do all along,* and then find out under Texas law or what happens with the IRS later, that surprise, you can't do that.

[Emphasis added.] This testimony demonstrates that one purpose of the amendment was to uphold the intentions of spouses who entered into premarital agreements before 1980. Further, other testimony during the public hearing and the floor debate in the Texas House of Representatives on April 10, 1979, indicates that the legislators sought to supersede the effect of this court's decision in *Williams* and the federal tax court's ruling in *Estate of Castleberry v. Commissioner of the Internal Revenue Service.*[5] Finally, the circumstances of the passage of the amendment less than two years after *Williams* and *Castleberry* indicate the legislature's intent to apply the constitutional amendment to agreements entered into before 1980. *See* Note, *The 1980 Texas Marital Property Amendment: An Analysis of Its Meaning and Effect,* 33 Baylor L.Rev. 307, 317 n. 71 (1981).

■ The amicus curiae contends that retroactive application of the 1980 amendment in this case would impair a vested right. *See* Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, *retroactive law,* or any law impairing the obligation of contracts, shall be made."). The amicus argues that Audrian had a vested right in one-half of Lillian's income because it was characterized as community property by operation of law. *See Hopkins v. Bacon,* 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249 (1930). We disagree. We believe that retroactive application of the 1980 amendment to article XVI, section 15, of the Texas Constitution would not impair any vested rights in this case.

The existence of any vested rights depends on whether the contract was void or voidable when Ronald and Lillian executed it in 1977. Audrian did not have a vested right in one-half of Lillian's income by operation of law, because Lillian had a *voidable* interest in the contract that the 1980 constitutional amendment impliedly validated. The voidable nature of this interest arises from an exception to the general rule that contracts violating the law are

---

4. Tex.H.R.J.Res. 54, 66th Leg., R.S., 1979 Tex. Gen.Laws 3227, 3227.

5. 68 T.C. 682 (1977), *rev'd,* 610 F.2d 1282 (5th Cir.1980). This case held that one-half of the income from a wife's separate property must be included in her husband's gross estate for federal estate tax purposes.

void. 15 S. Williston, *A Treatise On the Law of Contracts* § 1762, at 201–02 (1972) (quoting *Doherty v. Bartlett*, 81 F.2d 920, 926 (1st Cir.1936)) [hereinafter Williston, *Law of Contracts*]. This exception is set out in the Restatement (Second) of Contracts, which provides:

> In some instances, refusal to enforce a term may frustrate rather than further public policy. *This is likely to be the case where legislation was enacted to protect a class of persons to which the promisee belongs in transactions of the kind involved.* In such instances, there is no policy against the enforcement of the promise by one who belongs to that class.

Restatement (Second) of Contracts § 179 comment c (1981) (emphasis added)[6]; *see also* 6A A. Corbin, *Corbin On Contracts* § 1540, at 833–34 (1962); 14 Williston, *Law of Contracts* § 1630A, at 25.

When the Texas Legislature originally proposed the adoption of the Spanish model of community property laws, it failed to include a constitutional provision incorporating the Spanish rule that future spouses could contract to recharacterize their property as they desired. Cameron, Hoffman & Ytterberg, *Marital and Premarital Agreements*, 39 Baylor L.Rev. 1095, 1099–1100 (1987) [hereinafter Cameron]; Note, *Antenuptial Agreements: Perspectives On the Texas Constitution and the Community Property System*, 56 Texas L.Rev. 861, 862–63 (1978) [hereinafter Note]. Early court decisions interpreted our community property laws as establishing an inflexible system that forbade contracts attempting to recharacterize community property. *E.g., Gorman v. Gause*, 56 S.W.2d 855 (Tex.Comm'n App.1933, judgm't adopted). These decisions were the legal manifestations of the now outmoded belief that women were not capable of managing their affairs and needed the law's protection. Cameron at 1100; Note at 863.

Because Lillian is a member of the class intended to be protected by our earlier community property laws, the legislature and the citizens of Texas may, and did, validate premarital agreements such as this. The legislature and citizens could validate this premarital agreement because it was voidable when the parties entered into it. Because the contract was voidable, Audrian's community property rights in one-half of the income generated by Lillian's separate property never arose by operation of law.

We do not consider our statement in *Williams* that the agreement was "void" to be controlling here. The issue whether the premarital agreement was void or voidable was not before us in *Williams*. Nor was the question of implied validation, as the 1980 amendment had not yet been adopted. The only issue before this court was whether a premarital agreement waiving homestead rights and the exempt personal property set aside was constitutional. *Williams*, 569 S.W.2d at 868; *see also* McKnight at 450. This case, on the other hand, turns on the legal effect of the agreement when it was executed in 1977. Therefore, our prior classification of the agreement as "void," rather than "voidable," is not controlling under these facts. *See Wiener v. Zwieb*, 105 Tex. 262, 269, 141 S.W. 771, 774 (1911).

We hold that the 1980 amendment to article XVI, section 15, of the Texas Constitution demonstrates an intention on the part of the legislature and the people of Texas to not only authorize future premarital agreements, but to impliedly validate section 5.41 of the Texas Family Code and all premarital agreements entered into before 1980 pursuant to that statute. The legislature and the people of Texas have made the public policy determination that premarital agreements should be enforced. If we refuse to enforce Audrian's and Lillian's premarital agreement, we would thwart, rather than advance, our state's public policy enforcing these contracts. This, we decline to do.

Accordingly, we affirm the judgment of the court of appeals.

---

6. We adopted section 601 of the Restatement of Contracts in *Hughes v. Hess*, 141 Tex. 511, 172 S.W.2d 301 (1943). This section became comment c to section 179 of the Restatement (Second) of Contracts.

COOK, J., concurs.

COOK, Justice, concurring.

The instant contract, as did the contract in *Williams v. Williams,* 569 S.W.2d 867 (Tex.1978), violated the law when it was written. Contracts violating the law are ordinarily void. 15 S. Williston, *A Treatise on the Law of Contracts* § 1762, at 201–02 (1972). However, such contracts may be upheld when to do otherwise would actually frustrate public policy. Restatement (Second) of Contracts § 179 comment c (1981). If the contract entered into by Audrian and Lillian Beck were not enforced, the public policy that spouses may divide their property as Audrian and Lillian did would be thwarted.

I write separately to emphasize that retroactive validation based on subsequent law should be conservatively applied. This doctrine should be used only where the public policy is so clearly and broadly stated as to be unmistakable. The amendment of the state constitution to allow recharacterization of property is such an instance.

I concur in the judgment of this court.