COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| FRACCIONADORA Y URBANIZADORA DE JUAREZ, S.A. DE C.V., INMOBILIARIA Y CONSTRUCTOR BERZA, S.A. DE C.V., AEROSERVICIOS DE VIAJE, S.A. DE C.V., ABBA-FARMA, S.A. DE C.V. and JUAN CARLOS BERMUDEZ ESPINOSA | § § § § § | No. 08-16-00046-CV Appeal from the 388th Judicial District Court |
| Appellants/Cross-Appellees, | § | of El Paso County, Texas |
| v. | § | (TC# 2013DCM2366) |
| CLAUDIA PATRICIA ZARAGOZA DELGADO, | § | |
| Appellee/Cross-Appellant. | § § | |

**O P I N I O N**

This is an appeal from a final decree of divorce brought by Husband and Intervenors, accompanied by Wife's cross-appeal. Wife prevailed in the trial court. Husband and Wife are Mexican citizens, and both come from wealthy and influential families. They are fluent in Spanish and this was the first marriage for each. Husband was 29 at the time of marriage and Wife was 25. The crux of this appeal is whether a Mexican premarital agreement exists. The remainder of the issues presented stem from our analysis of that issue. We reverse and remand.

**HUSBAND'S APPEAL**

Husband brings six issues for review complaining that:

1

1. The trial court granted partial summary judgment in Wife's favor finding that there was no premarital agreement;

2. The trial court abused its discretion in refusing to admit the marriage certificate;

3. Evidence conclusively established interests in corporations and purchase money for residence were gifts from his father and were separate property;

4. The trial court erred in submitting the issue as to the ownership of Mexican corporations by non-parties to the jury;

5. The evidence is legally and factually insufficient as to valuation of the corporations; and

6. The evidence is legally and factually insufficient to support the award of attorneys' fees and costs.

## INTERVENORS' APPEAL

Intervenors are Mexican corporate entities claimed by Husband as separate property. They bring three issues, complaining that the trial court erred in:

1. Denying their petition to intervene;

2. Submitting Question Two to the jury, which included the Mexican corporations as part of the property to be divided; and

3. Awarding property belonging to Intervenors without due process of law.

## WIFE'S CROSS-APPEAL

Wife has also filed a cross-appeal, complaining that the trial court erred in partially granting Husband's objections to Wife's affidavit attached to her motion for summary judgment.

## FACTUAL SUMMARY

The parties married in Ciudad Juarez on February 23, 1996. They resided in Mexico until 2008 when they moved to El Paso for safety and security reasons. Wife filed for divorce in El Paso County, Texas on April 2, 2013. Husband answered and counter-petitioned, raising the existence of a Mexican premarital agreement and seeking the confirmation of his separate property.

2

*Pre-Trial Evidence*

During the hearing on temporary orders, Wife explained that Husband did not share his financial information with her but she knew that Husband owned properties, including a commercial center from which he received rent, as well as a purported half of an Aero Mexico franchise and a pharmacy-like business. The reporter's record of that proceeding indicates that Wife admitted to the selection of the separate property marital regime on the marriage certificate.

> [Cross-examination] Since you've been married since 1996 to now, you said he has never -- you don't know what he has or makes. Correct?
>
> [A] I mean, I know what properties . . . he has, but I don't know exactly the amount of cash, but he has the commercial centers. He receives cash.
>
> [Q] But [you've] never seen his bank statements or his tax returns or anything like that. Have you?
>
> [A] Recently not.
>
> [Q] Okay. And when you were married, you were married in Juarez. Were you not?
>
> [A] Yes.
>
> [Q] When you were married in Juarez, there is an act of matrimony, like a marriage certificate.
>
> [A] Yes.
>
> [Q] And on your marriage certificate, it indicates that there is a separate property -- I guess not agreement, but there's -- I guess in Mexico there's two separate ways to be married -- where everything is together, all the property is together. Correct?
>
> [A] Yes.
>
> [Q] One is where everything is separate. Correct?
>
> [A] Yes.
>
> **[Q] In your particular marriage, everything is supposed to be separate, correct, according to your marriage certificate?**
>
> **[A] Yes.** (Emphasis added.)

Husband, a real estate developer, declared that he owned land in Mexico. He also owned interests in

several businesses, including a real estate company, Fraccionadora y Urbanizadora de Juarez, S.A. de C.V. (FUJSA), Aeroservicios de Viaje, S.A. de C.V. (Aeroservicios), and Abba-Farma, S.A. de C.V. (Abba-Farma). We find the following statements made by the trial court to be instructive as to the progression of the proceedings:

> [Trial Court] And the thing is, [trial counsel] is I think I know what you are referring to. If you are referring to what I'm able to speak of, I'm going to have an additional request anyway. **My recollection from my family law courses in law school is just because you get that, if you get married in a separate property state in the United States, then you move to a community property state, too bad, too sad for you. You got divorced in a community property state.**
>
> [Counsel] I recall. Although, there's case law to the contrary that says under the Republic of Mexico --
>
> [Trial Court] They are not getting divorced -- I would like for you to brief that. (Emphasis added.)

Husband thereafter filed his motion for the trial court to take judicial notice of foreign law and each party submitted briefs. Wife did not address Mexican law but argued that once the parties moved to El Paso, the selection of the separate property regime became ineffective. The trial court denied Husband's request to judicially notice Mexican Law. Husband first filed a motion to reconsider and then an amended motion to take judicial notice accompanied by a copy of the marriage certificate, the applicable legal provisions of the Spanish Civil Code for the State of Chihuahua with regard to the separate property regime, and an English translation by a certified translator. Wife attached the amended notice to take judicial notice of foreign law to her motion for summary judgment, as we detail below.

*Motion for Summary Judgment*

**The Marriage Certificate**

Attached to Wife's motion for summary judgment is the marriage certificate certified by the Director of the Civil Registry in the State of Chihuahua. It reads:

4

**UNITED STATES OF MEXICO STATE OF CHIHUAHUA CIVIL REGISTRY MARRIAGE CERTIFICATE ON BEHALF OF THE FREE AND SOVEREIGN STATE OF CHIHUAHUA, AS DIRECTOR OF THE CIVIL REGISTRY I HEREBY CERTIFY AND ATTEST THAT FILED IN THE ARCHIVES OF THIS OFFICE IS THE FOLLOWING MARRIAGE CERTIFICATE CONTAINING THE FOLLOWING DATA:**

Thereafter, it recites the typed names of Husband and Wife, the names of their parents, their ages, nationality, date of marriage and the statement, "**MARRIAGE SUBJECT TO: SEPARATION OF PROPERTY.**" It concludes:

**THE PRESENT CERTIFICATION IS AN EXTRACT OF THE DEED WHOSE DATA ABOVE IS VERIFIED AND WHICH IS ISSUED ELECTRONICALLY BASED ON ARTICLE 49 OF THE CIVIL CODE FOR THE STATE OF CHIHUAHUA AND ARTICLE 2 OF THE INTERIOR RULES OF THE CIVIL REGISTRY OF THE STATE OF CHIHUAHUA. IN JUAREZ, JUAREZ, ON THE SIXTENTH [SIC] DAY OF JUNE 2014. I ATTEST.**

It is electronically signed by Cesar Fernando Ramirez Franco, Director of the Civil 7 Registry. Wife asserted that the marriage certificate did not meet the statutory requirements for a valid and enforceable premarital agreement and that, as a matter of law, no premarital agreement existed between the parties.

**Husband's Amended Motion to Take Judicial Notice of Foreign Law**
**Pursuant to Rule 203 of the Texas Rules of Evidence**

As we have mentioned, Wife attached the full content of Husband's amended motion to take judicial notice of Mexican law, including the provisions of the Civil Code of the State of Chihuahua relating to the requirement of the selection of a marital regime of separate or community property. These were accompanied by English translations by a duly certified translator. Noteworthy is the fact that Wife never responded to the amended motion nor refuted the translations by the certified translator despite the fact that it had been on file for roughly two years. Moreover, it was a live pleading and the trial court had not ruled upon it, which Husband's counsel drew to the court's attention. Finally, and perhaps most importantly, it constituted summary judgment evidence that was before the trial court. Exhibit B to the amended motion provides as follows:

5

**SEPARATE ASSETS REGIME IN THE STATE OF CHIHUAHUA**

**Applicable Legal Provisions.**

**Civil Code for the State of Chihuahua, articles 93, paragraph IV of article 94, articles 99, 165, 166, 167, 195, 200, 201 and 202.**

**Article 93.-   The individuals that wish to celebrate matrimony must submit before the head of the civil registry office correspondent at the address of either party, a brief stating:**

**I.   The names, last names, age, nationality, occupation and addresses of both of the requesting parties, as well as their respective parents if they are known.   When one of the parties or both were previously married, they must include the name of the person to whom they were married previously, the reason of the dissolution or annulment and the date of said occurrence;**

**II.   That there is no legal impediment for them to be joined in matrimony; and**

**III.   That they wish to be joined in matrimony.**

**The aforementioned brief must be signed by the requesting parties and in the event that one of the parties does not know how to write or read, the brief must be signed by a known individual of legal age and resident of the city in which the brief is submitted.**

**Article 94.-   The brief to which reference is made in the preceding paragraph, must be accompanied by the following exhibits:**

**IV.   The agreement which must be executed by the parties with regard to their existing assets and to the ones acquired during their marriage.   The agreement will state clearly if the marriage is formalized under the joint property or the Separate Assets regime.   If the parties are not of legal age, the agreement must be sanctioned by the individuals whom prior authorization for the celebration of the matrimony is required.   If for any reason the parties fail to include such an agreement and the marriage is formalized under the joint property regime, said joint property will be subject to the rules set forth in this Code.**

**Article 99.-   Following the above, the corresponding marriage certificate will be drafted, and said document will include:**

**VI.-   The statement of the contracting parties establishing that they formalize the marriage either under the joint property or Separate Assets regime.   If for any reason whatsoever the parties fail to state the above, the marriage will be considered formalized under the joint property regime.**

**Article 165.-   The marriage contract must be formalized under the joint property**

or Separate Assets regime.   In the event of failure to establish under which of the two options the marriage is formalized, the marriage will [be] considered as having been celebrated in accordance to the Joint Property regime and will be subject to the provisions set forth in this Code.

**Article 166.-**   The marriage capitulations or admissions are the agreements which the husband and wife formalize in order to incorporate the marital partnership or the Separation of Assets and to regulate the management of said assets in either case.

**Article 167.-**   The marriage capitulations may be granted before the formalization of the marriage or during its course and may comprise not only the assets which are individually owned by the spouses upon the enactment of the agreement, but also, the assets acquired at a later time.

**Article 195.-** The Separation of Assets may exist as a result of marriage capitulations prior to the marriage, or during the course of same, as a result of an agreement between the spouses or as the result of a court resolution.   The separation may comprise not only the assets individually owned by the spouses upon the formalization of the marriage, but also, the assets acquired at a later time.

**Article 196.-**   The Separation of the Assets may be total or partial.   In [the] event of the latter the assets which are not included within the capitulation clauses will be subject to the joint property that the spouses must organize.

**Article 200.-** In the Separation of Assets system, the spouses maintain the ownership and management of their respective property and as a result all of the profits and gains of said assets will not [be] subject to community ownership, they will be the sole property of the owner of the assets.

**Article 201.-**   Likewise, it will be the individual property of each spouse, any and all wages, income, compensations and profits resulting from the rendering of any personal and/or professional services, job or trade; as well as any commercial or industrial activity.

**Article 202.-** Each of the spouses must contribute to the education and nourishment of their children, as well as the other duties of matrimony in accordance to the provisions set forth in article 151.

Wife's counsel continued with the argument that Texas law applied.   Stated otherwise, her running theme of this litigation was that it did not matter what Mexican law provided because Texas law, and only Texas law, applied.

## Wife's Deposition

Wife also tendered as evidence the following portion of her deposition:

7

[Q] Or what did you do when you got married? What was the process?

[A] The -- first we went to church.

[Q] Uh-huh.

[A] We got married at church. And then we have the ceremony like the civil ceremony.

[Q] Uh-huh.

[A] And then you have witness, our parents, our family and the judge.

[Q] Okay.

[A] Uh-huh.

[Q] And at the civil ceremony, did you receive some sort of paperwork or anything?

[A] Just the paper just saying like --

[Q] That you're married.

[A] Yeah. Like a certificate.

[Q] Okay. Now --

[A] But I mean they don't give you anything to read or they don't give you -- they just said, "Is your name Claudia? Juan Carlos?" "Yes." "And you are here by your -- because you want to be here?" "Yes." And they ask if someone has . . . [o]bjections or something. "No." And then you get married.

[Q] And that's what happened in your case. Correct?

[A] I think it's the same in every marriage in Juarez.

[Q] Okay. And the certificate that you received when you got married there, did you have to designate whether it was going to be a community or separate property marriage?

[A] I think yes.

[Q] Yes. Do you recall what you designated?

[A] Excuse me?

[Q] Do you recall which one you chose?

8

[A] Do I know?

[Q] Yes.

[A] Or --

[Q] Do you remember?

[A] -- Did we spoke before we got married?  Like I don't understand.

[Q] When -- that day when you got your certificate, did you have to choose that day? Did you have to say "I'm going to be separate" or "I'm going to be community" that day or did you do it before?

[A] **No, I think -- I mean I don't remember**.  (Emphasis added.)

### Wife's Affidavit

Wife also attached an affidavit to her motion for summary judgment, which in part avers:

4. At no time prior to my marriage did I enter into a written premarital agreement with Juan Carlos.  **I never signed a premarital agreement prior to my marriage to Juan Carlos.**  (Emphasis added.)

5. Prior to our marriage, Juan Carlos did not disclose to me what property he owned or what his financial obligations consisted of.  I was never provided with a fair and reasonable disclosure of Juan Carlos's property or financial obligations.  I did not voluntarily or expressly waive, in writing, any right to disclosure of the property or financial obligations of Juan Carlos.  Before marrying Juan Carlos in 1996, I did not know what property or assets Juan Carlos possessed nor did I know what his financial obligations or debts consisted of.  Moreover, I could not have reasonably had adequate knowledge of the property or financial obligations of Juan Carlos due to my inexperience.

### Husband's Objections and Affidavit

Husband filed objections and a number of exhibits as summary judgment evidence.  Pertinent to our discussion, he specifically objected to paragraphs four and five of Wife's affidavit.  With regard to paragraph 4, he maintained that "[s]uch is conclusory and contradicts her deposition testimony, wherein she states that she 'does not remember.'"  He further objected to paragraph 5: "Such is conclusory and not within the affiant's personal knowledge."  The trial court sustained these objections.

Husband's own affidavit is equally important:

9

1. My name is **JUAN CARLOS BERMUDEZ**. I am over eighteen years of age and I am competent to make this affidavit. I have personal knowledge of the following events.

2. Prior to our marriage, we dated for approximately eleven years. She was studying business administration. Her family is a prominent business family in Mexico and her father is a savvy business person. Prior to and after our marriage she sought her father's advice concerning financial matters and had access to legal counsel.

3. Prior to our marriage I told her about the business interest my father had given to me.

4. **We selected the separate property regime. It is customary for people with assets to select this regime. It protects a person's inheritance from going to their spouse. She benefited from this selection as she could protect her inheritance from her family from me.** (Emphasis added.)

5. It is usual and typical for couples to select the separate property regime. It was the norm and it would have been very unusual for us to select the community property regime. I do not believe her family would have allowed her to select the community property regime.

6. I am not the only one who provided support for our family, my wife received monies from her family, which were also used for our support.

7. **We first applied for a marriage certificate prior to marrying in the church and selected the separate property regime. The regime was explained by the official. She agreed and indicated her agreement by signing the application**. (Emphasis added.)

The trial court granted partial summary judgment because she believed Texas law applied and, because Texas is a community property state, any foreign agreement addressing disposition of marital property was invalid.

## STANDARD OF REVIEW

The standard of review in a summary judgment proceeding is well-established. The movant for summary judgment has the burden to show that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.–Houston [14th Dist.] 1992, writ denied). In

10

deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548-49. We reiterate that the portions of Wife's affidavit relating to her denial of signing the certificate were stricken and Husband's affidavit must be taken as true.

## IS THERE A PREMARITAL AGREEMENT?

### Texas Law

Premarital agreements which convert what would otherwise be community property to separate property are authorized by the Texas Constitution and Chapter 4 of the Texas Family Code. TEX.CONST. art. XVI, § 15. It is the public policy of the state of Texas to enforce these agreements. *Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991). They are presumptively enforceable, and that presumption will support a summary judgment that the agreement is enforceable without evidence other than the existence and terms of the agreement. *Grossman v. Grossman*, 799 S.W.2d 511, 513 (Tex.App.–Corpus Christi 1990, no writ). A party opposing enforcement of the agreement bears the burden to rebut the presumption of validity and establish the premarital agreement is not enforceable. *Marsh v. Marsh*, 949 S.W.2d 734, 739 (Tex.App.–Houston [14th Dist.] 1997, no pet.).

Parties to a premarital agreement may partition or exchange the income from their respective separate properties into the separate property of the owner spouse. *Beck*, 814 S.W.2d at 746, 749; *Jurek v. Crouch-Jurek*, 296 S.W.3d 864, 867 (Tex.App.–El Paso 2009, no pet).

Similarly, persons about to marry can, through a premarital agreement, validly recharacterize as separate property what would otherwise be their community property salary or earnings. *Winger v. Pianca*, 831 S.W.2d 853, 855, 857-858 (Tex.App.–Austin 1992, writ denied). Indeed, parties may enter a premarital agreement which precludes the acquisition of any community property during their marriage. *Chiles v. Chiles*, 779 S.W.2d 127,128 (Tex.App.–Houston [14th Dist.] 1989, writ denied).

11

**Mexican Law**

Because this is a summary judgment proceeding, Wife–as the Movant–must demonstrate there is no issue of material fact, and that she is entitled to judgment as a matter of law. All evidence favorable to Husband will be taken as true, every reasonable inference will be indulged in his favor, and all doubts resolved in his favor. Wife must establish, as a matter of law that no premarital agreement exists. Thus, we assume that Husband's amended motion to take judicial notice of foreign law pursuant to Rule 203 of the Texas Rules of Evidence with its attached Exhibit B (all of which is attached to Wife's motion for summary judgment and therefore constitutes summary judgment evidence) accurately states the law of the State of Chihuahua, Mexico relating to the election by marrying parties as to whether the community property or separate property regime will govern the characterization of property acquired during their marriage.

The Civil Code for the State of Chihuahua provides details regarding the nature and election of a marital regime by parties to be married. Article 165 of the Code requires that the marriage contract must be executed under the joint property (Sociedad Conyugal) regime or separate assets (Separacion de Bienes) regime. If there is no record of regime selected, the marriage will be governed by the joint property regime. Article 166 identifies "marriage capitulations or admissions" as the agreements by which the parties formalize their choice of either the joint property or separate assets regime, and Article 167 and 195 provide that the "capitulations" may be entered before or after the marriage, and may deal with assets in existence at the time of execution as well as subsequently acquired assets. Article 196 provides that the choice of the separation of assets regime may be total or partial. If the parties choose the partial separate property regime, those assets not identified as controlled by the separate property regime are governed by the joint property regime. Article 200 provides that under the separation of assets regime, each spouse continues to maintain the ownership and control of his or her respective property and that the income from the assets governed by the separate property regime will also be the

12

separate property of the owner of the asset.    Article 201 makes wages and earnings of a party his or her separate property.

The commentary in Exhibit B summarizes the effect of the Civil Code for the State of Chihuahua–a couple entering into a marriage must elect either the joint or separate property regime. Under the joint regime the assets the parties bring into the marriage as well as the assets acquired during the marriage are community property, together with the income from those assets.    Under the separate assets regime, each spouse maintains the individual ownership and control of his or her property and the income or production of that property.    Additionally, the income from the personal services of a spouse is also that spouse's separate property.    The parties may also agree that the separate property regime will apply to some assets and the joint property regime will apply to others.    If the parties do not select a marital regime, they will be deemed to have the joint property regime.

Article 99, which sets forth the information that must appear in the marriage certificate, requires a statement by the parties that the marriage is contracted under the joint property or separation of assets regime.    The parties' marriage certificate attached to Wife's motion for summary judgment reflects that the couple selected the separate assets regime.

Article 93 requires persons intending to marry to submit a written application signed by each providing certain personal information about both.    Article 94 mandates that the application contain an agreement by the parties that their existing assets as well as assets to be acquired following the marriage will be governed by the joint property or separate assets regime.    The Article further provides that in the event the parties do not identify a regime, the joint property regime will control.    Article 99 provides that following the execution of the marriage application, the marriage certificate is drafted identifying the regime agreed to in the application.    Again, if no regime is chosen, the parties' ownership and acquisition of property will be controlled by the joint property regime.

**Comparison**

The laws of Texas and Chihuahua as they relate to premarital agreements are quite similar. Prospective spouses in Texas and Chihuahua may enter valid premarital agreements dictating that no community property will be acquired during the marriage. The laws of both states allow individuals about to marry to agree that income from their separate property, and/or their personal earnings, will remain separate property. Both Texas and Chihuahua allow persons about to marry a great deal of flexibility in determining the character of the various types of property they will acquire during their marriage. In our view, it would not be against the public policy of Texas to enforce a premarital agreement properly executed in Chihuahua, Mexico. We conclude that Wife did not establish as a matter of law that no premarital agreement exists.

We repeat again that the trial court granted summary judgment because she believed Texas law applied and, because Texas is a community property state, any foreign agreement addressing characterization of property must comport with Texas community property laws. To the contrary, Texas courts have held that premarital agreements entered into in another state must be evaluated under the law of the sister state. *Rathjen v. Rathjen*, No. 05-93-00846-CV, 1995 WL 379322 (Tex.App.– Dallas May 30, 1995, writ denied) (not designated for publication) ("Because we conclude the PMA is valid under Hawaii law and enforceable in Texas, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.").

Nevertheless, Wife maintains that TEX.FAM.CODE ANN. § 1.103 mandates that Texas law, rather than the law of Chihuahua, Mexico controls this case. ("The law of this state applies to persons married elsewhere who are domiciled in this state"). Yet Section 4.003(a)(7) allows parties to enter into a premarital agreement to contract with respect to the choice of law governing the construction of their agreement. The parties chose to be married in Chihuahua, Mexico, whose laws required that their marriage be contracted under either the community property or separate property regime. They chose

14

to be married under the separate property regime as evidenced by the marriage certificate which Wife attached to her motion for summary judgment as evidence.

Wife's reliance on TEX.FAM.CODE ANN. § 7.002(a) is also misplaced. That section allows courts to divide property acquired by either spouse while domiciled elsewhere if the property would have been community property had the spouse been domiciled in Texas at the time of acquisition. Here, assuming the validity of a Mexican premarital agreement, all of the acquired property is either the separate property of Husband or Wife as the result of their premarital agreement and would fall outside the application of § 7.002(a). Specifically, § 7.002(b) would control. That section provides in part:

> (b)   In a decree of divorce or annulment, **the court shall award to a spouse** the following real and personal property, wherever situated, as the separate property of that spouse:
>
> (1)   **property that was acquired by the spouse while domiciled in another state and that would have been the spouse's separate property** if the spouse had been domiciled in this state at the time of acquisition[.]   (Emphasis added.)

Assuming *arguendo* that a valid and enforceable Mexican premarital agreement existed, all of the spouses' personal earnings, as well as the earnings from their respective separate properties, would be the separate property of each as a result of their premarital agreement. Stated differently, the property in this case is not simply property which was acquired while the parties were domiciled elsewhere. It is property characterized under the terms of a premarital agreement as separate property acquired while the parties were domiciled elsewhere.

We find an additional case to be particularly persuasive. *Carrillo v. Garzon*, No. 14-94-00630-CV, 1995 WL 628156 (Tex.App.–Houston [14th Dist.] Oct. 26, 1995, no writ) (not designated for publication). The couple married in Mexico and selected the separate property regime on the marriage certificate. They divorced in Mexico, but Carrillo later filed suit in Texas to divide what she alleged to be community property not divided in the decree. Her former husband filed a motion for summary judgment based primarily on *res judicata*. Her argument on appeal was that summary judgment was

15

granted in error because the Mexican premarital agreement was unenforceable under Texas law. But the court's opinion does not hinge solely on the fact that the couple divorced in Mexico. It speaks far more broadly to enforcement of Mexican agreements. After first addressing *res judicata*, the court opined that "marriage agreements which designate the character of property to be acquired during the marriage are valid in Texas." *Id.* at *3. It noted that "under Mexican law, couples about to marry *must* select one of two 'regimes' or marriage contracts they wish to regulate their assets. The choices are a community property regime or a separate property regime." *Id.* at *1. Carrillo and Garzon selected the separate property regime. In her Texas lawsuit, Carrillo maintained that the Mexican law governing the separate property regime should not control the disposition of assets outside of Mexico. The appellate court disagreed:

> This argument is an attempt to relitigate the property ownership which we already have said Carrillo cannot do because she is barred by res judicata from doing so. **But more importantly, this argument calls for us to ignore the marriage contract the parties executed. This contract controls not only the marriage *relationship* but also the *property* acquired by either of the parties during the marriage. By choice, the parties pre-ordained the character of all property to be acquired during the marriage.** *Id.* at *3. (Emphasis added.)

Significantly, the court concluded that since Texas favors premarital agreements,

> **[I]t is inconceivable to think that a Texas court would invalidate a premarital agreement that was valid in Mexico when it was executed and now would be valid in Texas.** *See Beck v. Beck*, 814 S.W.2d 745 (Tex. 1991). *Id.* at *4. (Emphasis added.)

We agree. Because the trial court erroneously granted a partial summary judgment, the ruling was erroneous as a matter of law. We sustain Husband's Issue One.

### FAILURE TO ADMIT SIGNED MARRIAGE CERTIFICATE AT TRIAL

The case proceeded to jury trial. Although both Husband and Wife had identified the February 23, 1996 marriage certificate as a trial exhibit, Wife testified that she did not recall signing the marriage documents at the civil marriage ceremony. The marriage certificate attached to Husband's amended

16

motion to take judicial notice of foreign law featured the typed names of the parties but not their signatures. When Husband's amended motion was attached to Wife's motion for summary judgment, the Acto de Matrimonio did not include the parties' signatures either. But during the jury trial, an executed marriage certificate was offered as an exhibit to impeach Wife's denial. Her counsel objected and alleged, in part, that Husband was producing a new document that differed from the document produced during the summary judgment proceedings. That is certainly true. Then the attorneys argued as to whether the signed marriage certificate had been timely disclosed during discovery. Husband's counsel affirmed that it had been provided to Wife, but Wife's counsel asserted that he had not received it.

In his second issue on appeal, Husband complains that the trial court abused its discretion in excluding the exhibit bearing Wife's signature. Nevertheless, because we cannot ascertain from the voluminous record--which consists of twenty-eight reporters' records and sixteen clerk's records--whether the executed marriage certificate was timely disclosed, we overrule Issue Two.

## CONCLUSION

We have sustained Husband's first issue and overruled the second. Issues Three through Six are denied as moot. We deny Wife's issues as moot. Had her affidavit been admitted over Husband's objections, there was at the very least a fact issue as to her signature on the Acto de Matrimonio precluding partial summary judgment. With regard to the position of the Intervenors, we trust that if the Mexican entities are not joined by Husband or Wife, they will nonetheless intervene timely. We reverse and remand for proceedings consistent with this opinion.

ANN CRAWFORD McCLURE, Senior Judge

October 22, 2020

Before Rodriguez, J., Palafox J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)

17