Stevan Mile DOKMANOVIC, Appellant,

v.

Evalee C. SCHWARZ, Appellee.

No. B14–93–00041–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 14, 1994.

Michael P. Von Blon, Houston, for appellant.

Robert J. Piro, Marian S. Rosen, Houston, for appellee.

Before SEARS and LEE, JJ., and WILLIAM E. JUNELL, Justice, Sitting by Designation.

## OPINION

JUNELL, Justice, Sitting by Designation.

Stevan Mile Dokmanovic appeals from a decree of divorce and raises eight points of error challenging the sufficiency of the evidence and the enforceability and effect of an antenuptial agreement. We affirm.

Appellant and appellee executed an antenuptial agreement on December 23, 1987 and executed an amendment to this agreement one day later. This agreement, in pertinent part, provided that the income or increases in the parties' separate property would remain the separate property of the owner of the separate property producing the increase or income. The parties were married on April 8, 1988.

In points of error one through three, appellant challenges the trial court's rulings with respect to the antenuptial agreement. Appellant argues that the agreement violates the Texas Constitution, that the trial court erred in enforcing the agreement because no property was partitioned as required by the agreement, and that the trial court erred in enforcing the agreement as it concerned property acquired after marriage with commingled funds. We turn first to the constitutional challenge.

The agreement contained the following provisions:

(d) Separate property increases, income, or proceeds which the law of Texas classifies as separate property shall remain the separate property of the owner of the separate property producing the increase, income, or proceeds.

. . . .

(f) All income of the separate property of each party shall be treated as the separate property of the party owning the separate property producing the income. All earnings for personal services of each party shall be treated as the separate property of the party earning the income. In support of the intention of the parties, the parties observe that Art. 16, Sec. 15 of the Texas Constitution permits spouses to so contract and that this premarital contract is an effective and binding contract only upon condition of and completion of the marriage ceremony. Also, the parties note that the above constitutional provision permits the partition of property to be acquired into separate estates. Consequently, the parties declare that any future income from personal earnings shall be partitioned and set aside regularly, each party's earning to that party.

In pertinent part, the Texas Constitution provides:

All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse; ... *provided that persons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition* between themselves all or part of their property, then existing or to be acquired, *or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse* ... in other community property then existing or to be acquired, ... *spouses also may from time to time, by written instrument, agree between themselves that the income or property from all or part of the separate property then owned or which thereafter might be acquired by only one of them, shall be the separate property of that spouse....*

TEXAS CONSTITUTION, art. XVI, § 15 (1980). Thus, the Texas Constitution allows prospective spouses and spouses to enter into written instruments to partition their property or exchange their community interests in prop-

erty. Additionally, spouses (but not prospective spouses) may enter into written agreements recharacterizing as separate property the income or property from separate property.

Appellant argues that the agreement is unconstitutional because art. XVI, § 15 allows only spouses, and not persons about to marry, to enter into written agreements recharacterizing to separate property the income from separate property. In support of this argument, appellant cites *Fanning v. Fanning,* 828 S.W.2d 135 (Tex.App.—Waco 1992), *aff'd in part, rev'd and remanded in part on other grounds,* 847 S.W.2d 225 (Tex. 1993).

In *Fanning,* the parties had executed a premarital agreement containing the following provisions:

6.01) During their marriage, all income and revenue (other than that which is part of the property itself) from the separate property of each party hereto is the community property of the parties if so defined by Texas law. [The agreement then mentions the proposed 1980 amendment allowing the recharacterization of the income from separate property.] If such amendment to Article XVI, Section 15, of the Texas Constitution is approved by the voters, the parties agree that as soon as legally possible all income from their respective estates shall be the separate property of the spouse from whose separate estate such income is derived.

6.02) The parties agree that each may, from time to time, designate certain banks as his or her agent to assist in carrying out this Agreement by administering accounts in the name of the respective party, by the name of the party adding "as separate property," or other wise, to the end that all funds which are deposited to the separate accounts of the parties hereto and income therefrom will be identified as the separate property of the party in whose name such funds are held. As received, the respective parties shall deposit funds received that are the income or revenue from their respective separate property into one of their respective several or separate property accounts created in their respective

and on deposit (if not before) such funds shall be the separate property of the spouse whose separate property produced such income or revenue, if so provided by this Agreement. The parties hereto hereby instruct any bank holding such funds on deposit as provided in this paragraph that such funds are the separate property of the party in whose name such deposit was made as provided in this paragraph.

*Id.* at 139–40. The trial court refused to enforce this agreement. *Id.* at 139. The appellate court, however, affirmed in part and reversed and remanded in part. *Id.* at 152. The appellate court affirmed the trial court with respect to paragraph 6.01 because the court found that the language of this paragraph did not indicate the parties were "contemplating a partition or exchange of property to be acquired during the marriage." *Id.* at 141. Instead, the court found that this paragraph attempted to implement the portion of Art. XVI, § 15 that applies only to spouses. *Id.* at 142. The court stated that this section of the constitution "did not authorize persons intending to marry to enter into agreements that the income from one spouse's separate property would thereafter be the owner's separate property. *Id.* at 141. Thus, the court found paragraph 6.01 invalid. *Id.* at 142.

Paragraph 2 of the agreement, however, provided that the property described in one schedule "is and shall remain the separate property of Future Husband," and that the property described in another schedule "is and shall remain the separate property of Future Wife." *Id.* The court found this paragraph to effect a partition or exchange. *Id.* Because the parties' incomes from their careers were included in these schedules, the court held that this paragraph effectively recharacterized the nature of the parties' income from their careers. *Id.* The supreme court affirmed the enforceability of the agreement without discussing any particular paragraphs of the agreement. 847 S.W.2d 225, 226.

*Fanning* does not support appellant's claim that the instant agreement is unconstitutional. The paragraph of the premarital agreement found unconstitutional in *Fanning*

expressly referenced the portion of the 1980 constitutional amendment applying only to spouses. *Id.* at 141–42. The other paragraph in the *Fanning* agreement was upheld as a partition or exchange. *Id.* This validated paragraph provided that property described in attached schedules, including the parties' income, would remain the parties' separate property. *Id.*

Similarly, in *Beck v. Beck,* 814 S.W.2d 745 (Tex.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992), the court upheld another premarital agreement recharacterizing community property as separate property. In *Beck,* the parties executed a premarital agreement providing "that all properties of every kind and nature, real and personal, held or standing in the name of only one of them, shall be considered as the separate property of the one of them in whose name such property is held or stands, and that only properties, whether real or personal, held or standing in their joint names shall be considered as community property." 814 S.W.2d at 746. Although this agreement was also executed before the 1980 amendment to the constitution, the trial court found this agreement enforceable and the court of appeals agreed, holding that it was constitutional as an exchange of each parties' community interest in future income from separate property. *Id.* The supreme court affirmed, holding that the 1980 amendment impliedly validated section 5.41 of the Texas Family Code, which allowed premarital agreements, and all premarital agreements entered into before 1980 pursuant to that statute. *Id.* at 749.

In *Winger v. Pianka,* 831 S.W.2d 853 (Tex. App.—Austin 1992, writ denied), the parties signed a premarital agreement in which they agreed "to waive any and all rights to 'community property,' should this marriage terminate in divorce." The parties further reserved full ownership in certain listed property, including any and all income. *Id.* at 854. The trial court enforced this agreement and the appellate court upheld this, finding that the agreement was valid as a partition or exchange of income to be acquired by the parties during their future marriage. *Id.* at 858.

We believe these cases show the courts' willingness to validate the intent of the parties and to uphold premarital agreements against constitutional challenges unless the language of the agreement forecloses that choice. The agreement in this case, like those in *Fanning, Winger,* and *Beck,* indicated the parties' intent to exchange their community interests in income from separate property and in earnings. Although the agreement also contains a sentence indicating an intent to partition income in the future, this provides an alternative and unnecessary method for recharacterizing community property as separate property because the prior sentences accomplish the purpose of exchanging interests without the need to execute additional agreements.

In *Bradley v. Bradley,* 725 S.W.2d 503 (Tex.App.—Corpus Christi 1987, no writ), the parties entered into a prenuptial agreement providing that "on or before the 15th day of April of each year during the existence of this marriage, [the parties] will fairly and reasonably partition (and/or exchange) in writing all of the community estate of the parties on hand that will have accumulated since January 1 of the preceding year...." *Id.* at 504. The appellate court found that this agreement did not operate to partition and exchange the community property interests in the parties' income from personal efforts. *Id.* In fact, the court found that the agreement merely contemplated a partition and exchange of community property interests in the future. *Id.* Therefore, the trial court reversed the trial court's ruling that the husband's income from personal earnings was his separate property. *Id.*

The agreement in *Bradley* is distinguishable from that in our case. The only statement regarding recharacterization of community property to separate property in *Bradley* clearly contemplates future action to accomplish the recharacterization. In our case, the agreement does have language requiring no future action that accomplishes the exchange of the parties' property. Accordingly, we hold that the antenuptial agreement in this case was valid as an exchange of income to be acquired by the parties during their future marriage. Because the agreement

was valid, there were no commingled funds with which property was acquired during marriage. Furthermore, no partition was required where a valid exchange occurred. We overrule points of error one, two, and three.

■ In point of error four, appellant claims the trial court erred in finding that certain properties described in sections 8.3 and 8.4 of the final decree were appellee's separate property. Section 8.3 confirmed listed property as the separate property of appellee. Section 8.4 decreed certain listed debts and obligations as appellee's separate debts and obligations. In point of error five, appellant contends insufficient evidence supports the trial court's finding that properties acquired after marriage were appellee's separate property. These points relate to our disposition of points of error one through three. Appellant claims that no partition occurred and thus, there was commingling of community and separate property. The trial court found that, based on the valid premarital agreement, there was no community property. We agree that the agreement prevented the creation of any community property and we overrule points of error four and five.

■ In point of error six, appellant challenges the trial court's refusal to allow discovery that would identify and trace community and separate property. Appellant contends the trial court abused its discretion in denying discovery necessary to establish commingling and to refute appellee's claims of separate property. Appellee responds that such discovery was irrelevant once the court found the antenuptial agreement valid and enforceable.

In an appeal from a discovery or evidentiary ruling, an appellant must preserve error by making a timely request, objection, or motion setting forth its specific basis and by obtaining a ruling by the trial court. TEX. R.APP.P. 52(a). The standard of review is whether the trial court's order, in light of the entire record, "was reasonably calculated to cause, and probably did cause rendition of an improper judgment." TEX.R.APP.P. 81(b)(1). Under Rule 166b(2), a party may obtain discovery regarding any matter relevant to that party's claim or defense. TEX.R.CIV.P. 166b(2)(a).

On October 2, 1991, the trial court granted appellee's motion for summary judgment, finding the antenuptial agreement valid and enforceable. Appellant filed numerous requests for production of documents, but many documents requested were not produced until trial, after appellant had rested his case. In his brief, appellant makes the following statement about the trial court's denial of discovery:

> The Court's ruling appeared to be that the documents were not discoverable because, in light of the Agreement, the documents were not relevant. (Supp.R. p. __)

Appellant does not provide us with a record citation for the trial court's ruling that denied discovery to appellant. Indeed, our review of the record reveals no denial in the transcript or in the statement of facts. After a lengthy discussion on the record about some financial records of appellee's, the trial court orally ordered appellee to produce immediately all checks by Leland Lincoln–Mercury or other entities controlled by appellee, ledgers, notes, or other documentary evidence regarding alleged investments by appellant in Leland Lincoln–Mercury. The trial court also ordered appellee to produce all notes regarding a bay house. The trial judge added that, if appellant could establish from these documents that more testimony was needed, he would entertain a request to open testimony again. Appellant never asked the trial court to re-open testimony.

Appellant did continue to make objections to the introduction of certain financial documents on the ground that these had not been previously produced to appellant. However, appellant's complaint is not that the trial court erred in admitting this evidence. Rather, appellant's complaint is that he was denied discovery. Because we have found no trial court ruling that denied discovery to appellant and the trial court did order the production of documents to appellant during trial, we find that appellant has not preserved this complaint for review, and even if it were preserved, we would find no harm to appellant under Rule 81(b)(1). Accordingly, we overrule point of error six.

In point of error seven, appellant claims there was no evidence of the residence of either party as required by TEX.FAM.CODE ANN. § 3.21 (Vernon 1975). Section 3.21 provides that "[n]o suit for divorce may be maintained unless at the time suit is filed the petitioner or the respondent has been a domiciliary of this state for the preceding six-month period and a resident of the county in which the suit is filed for the preceding ninety-day period." TEX.FAM.CODE ANN. § 3.21 (Vernon 1993). These residency requirements are not jurisdictional, but prescribe qualifications to be met before the court is authorized to grant a divorce. *McCaskill v. McCaskill,* 761 S.W.2d 470, 472 (Tex.App.—Corpus Christi 1988, writ denied).

Furthermore, admissions in trial pleadings are considered judicial admissions in the case in which the pleading is filed and no proof is required of the admitted fact. *Id.* Appellant admitted in his petition that he satisfied the residency requirement of section 3.21, and thus, he may not now challenge the evidence as insufficient to show that the requirements of section 3.21 were met. *Id.* at 473. Appellee also admitted in her petition that she met the residency requirements of § 3.21. We find these judicial admissions more than sufficient evidence of residency. We overrule point of error seven.

In point of error eight, appellant complains that the antenuptial agreement was not signed in contemplation of the April 8, 1988 marriage. The agreement was signed on December 23, 1987 and the amendment was signed on December 24, 1987. The parties had originally planned to wed on December 31, 1987, but that plan changed. The parties did not actually marry until April of 1988, some three months later. The agreement does not restrict its validity or effectiveness to the originally planned wedding date. Rather, the agreement states:

> [Appellant] and [appellee], both of Houston, Harris County, Texas, are single persons who contemplate marriage to and with each other in the immediate future. If for any reason the marriage does not take place, this Agreement will be of no force or effect. The effectiveness of this Agreement is expressly conditioned on the occurrence of such marriage and shall be deemed in full force and effect upon the completion of the marriage ceremony.

We find this provision sufficient to allow it to become effective on the April marriage date. We overrule point of error eight.

We affirm the trial court's judgment.