White v. White 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-094-CV

        CHARLES CLINTON WHITE,
Appellant
        v.

        LYNDA WHITE,
Appellee
 

From the 255th District Court
Dallas County, Texas
Trial Court # 94-916-S
                                                                                                    

O P I N I O N
                                                                                                    

          Appellant Charles Clinton White appeals a final declaratory judgment holding that a
prenuptial agreement entered into by himself and his former spouse, appellee Lynda White, was
unenforceable. He brings a single point of error: Whether the trial court erred in finding that the
parties' prenuptial agreement did not provide for an exchange of community interests. We will
reverse and render judgment in favor of the appellant.
          Charles and Lynda, married on May 3, 1981. Two days earlier, they executed a prenuptial
agreement. The agreement provided, in relevant part:
          This agreement is made by and between Charles Clinton White ... and
Lynda Sue English (now White) ... in contemplation and consideration of their
forthcoming marriage. It is the express desire and intention of both [parties] to
define that property which each brings into the marriage and to that end to
designate that property and set it apart as the sole and separate property of each
such party.
          It is specifically recognized by both [parties] that Charles Clinton White has
over the years and prior to the [parties'] marriage accumulated numerous assets
consisting of both real and personal property of a substantial value and it is the
specific intent and desire of Lynda Sue English to forever disclaim any interest in
these assets and the income or benefits which they might produce after the [parties']
marriage.
...
          [T]he parties do hereby stipulate and agree as follows:
          1. All real property hereinafter described and set forth in Exhibit "A" ...
together with all income presently derived therefrom or which may be derived
therefrom in the future as well as all real property interest hereafter acquired as the
result of options relating to said property which provides for the right to purchase,
partake, participate in, rent, lease or acquire additional property shall be and the
same shall forever remain the sole and separate property of Charles Clinton White.
          2. All personal property hereinafter described and set forth as Exhibit "B"
... together with all present and future income derived from said property ... shall
be and shall ... forever remain the sole and separate property of Charles Clinton
White.
...
          4. All personal property hereinafter described and set forth in Exhibit "C"
... together with all present and future income derived therefrom shall be and the
same shall forever remain the sole and separate property of Lynda Sue English.
...
          As an additional consideration to the execution of the agreement, Charles
Clinton White agrees to obtain a policy of ordinary life insurance upon his life in
the amount of $10,000.00, within 180 days after the marriage of the parties, and
shall designate Lynda Sue English as the primary beneficiary of the policy to be
retained as such as long as the policy remains in effect.
 
The value of the real properties listed in Exhibit "A" was estimated at $825,000.00. Exhibit "B"
listed personal properties with an estimated value of $1,778,379.48. Listed in Exhibit "C", the
properties belonging to Lynda prior to her marriage to Charles, were a 1978 Buick Regal, whose
value was not indicated; a coin set with accompaniments worth approximately $1,095.00; life
insurance policies for Lynda and her two daughters whose values were not indicated; and a
contingent interest in the proceeds from a personal injury lawsuit whose estimated value was not
indicated.
          Notwithstanding either the intention of Lynda in entering the agreement or the express
wording thereof, she argued to the trial court by means of a suit for declaratory judgment that the
agreement failed to divide the marital estate so as to allow each party to characterize the income



from his or her separate property as separate property. The trial court entered judgment in her
favor.
          The source of Charles's and Lynda's conflict is the sole constitutional provision in this
state governing the proper characterization of marital property as either separate or community
property, article XVI, section 15. See Tex. Const. art. XVI, § 15 (1948, amended 1980). On
the date the Whites were married, which simultaneously served as the effective date of their
prenuptial agreement, article XVI, section 15, provided:
All property, both real and personal, of a spouse owned or claimed before marriage, and
that acquired afterward by gift, devise or descent, shall be the separate property of that
spouse; and laws shall be passed more clearly defining the rights of the spouses, in
relation to separate and community property; provided that persons about to marry and
spouses, without the intention to defraud pre-existing creditors, may by written instrument
from time to time partition between themselves all or part of their property, then existing
or to be acquired, or exchange between themselves the community interest of one spouse
or future spouse in any property for the community interest of the other spouse or future
spouse in other community property then existing or to be acquired, whereupon the portion
or interest set aside to each spouse shall be and constitute a part of the separate property
and estate of such spouse or future spouse; and the spouses may from time to time, by
written instrument, agree between themselves that the income or property from all or part
of the separate property then owned by one of them or which thereafter might be acquired,
shall be the separate property of that spouse; and if one spouse makes a gift of property
to the other that gift is presumed to include all the income or property which might arise
from that gift of property.




Id. It is undisputed that article XVI, section 15, allows prospective spouses to recharacterize their
community interests in the income generated from the other's separate property as separate
property, provided the prospective spouses either partition or exchange those interests. See id. 
Charles argues that the prenuptial agreement accomplished an exchange of community interests
in the income generated from the other's separate property and, therefore, is enforceable under
article XVI, section 15. Lynda, however, contends the agreement did not involve either a
partition or an exchange of community interests and, consequently, is unenforceable under article
XVI, section 15. She raises two arguments in support of her contention; first, she argues our
reasoning in Fanning v. Fanning, 828 S.W.2d 135 (Tex. App.—Waco 1992), rev'd on other
grounds, 847 S.W.2d 225 (Tex. 1993), demands a decision in her favor; second, she contends the
language of the agreement reveals solely an attempt by both parties to define the property each
spouse brought into the marriage as separate property, not to effectuate a partition or exchange
of each other's community interests.
I. Whether Fanning Compels a Decision in Lynda's Favor
          This court previously addressed in Fanning the enforceability of prenuptial agreements
under article XVI, section 15, where the future spouses appear to have attempted to exchange their
community interests in the income derived from each other's separate property. At issue in
Fanning were two separate and distinct paragraphs from the parties' prenuptial agreement. They
read:
6.01) During their marriage, all income and revenue (other than that which is part of the
property itself) from the separate property of each party hereto is the community property
of the parties if so defined by Texas law. However, the parties understand that the 66th
Texas legislature approved H.J.R. 54, to be submitted to the voters on November 1980,
by the terms of which spouses may, by agreement between themselves, provide that the
income from separate property owned by either of them, or thereafter acquired, shall be
the separate property of the spouse owning such separate property. If such amendment to
Article XVI, Section 15, of the Texas Constitution is approved by the voters, the parties
agree that as soon as legally possible all income from their respective estates shall be the
separate property of the spouse from whose separate estate such income is derived. 
6.02) The parties agree that each may, from time to time, designate certain banks as his
or her agent to assist in carrying out this Agreement by administering accounts in the name
of the respective party, by the name of the party adding "as separate property," or
otherwise, to the end that all funds which are deposited to the separate accounts of the
parties hereto and income therefrom will be identified as the separate property of the party
in whose name such funds are held. As received, the respective parties shall deposit funds
received that are the income or revenue from their respective separate property into one
of their respective several or separate property accounts created in their respective and on
deposit (if not before) such funds shall be the separate property of the spouse whose
separate property produced such income or revenue, if so provided by this Agreement. 
The parties hereto hereby instruct any bank holding such funds on deposit as provided in
this paragraph that such funds are the separate property of the party in whose name such
deposit was made as provided in this paragraph.

Fanning, 828 S.W.2d at 139-140. While each of the two paragraphs evinces an attempt by both
parties to recharacterize the income from their separate property as separate property, we held
only the latter paragraph enforceable under article XVI, section 15. Id. at 140-142.
          In concluding that paragraph 6.02 was enforceable, we cited a decision by the Texas
Supreme Court in Beck v. Beck, 814 S.W.2d 745 (Tex. 1991), cert. denied, — U.S. —, 112 S.Ct.
1266 (1992), holding that a substantially similar provision in the prenuptial agreement at issue in
Beck was enforceable, i.e., the income from the spouses' separate property in the bank accounts
mentioned in paragraph 6.02 would be considered to be each spouse's separate property. The
provision in Beck provided:
Notwithstanding that under the laws of the State of Texas the income from respective
separate properties of [the spouses] will be community property, they hereby agree that all
the properties of every kind and nature, real and personal, held or standing in the name of
only one of them shall be considered as a separate property of the one of them in whose
name such property is held or stands, and that only properties, whether real or personal,
held or standing in their joint names shall be considered as community property. 

Beck, 814 S.W.2d at 746.


 This provision in Beck, like paragraph 6.02 in Fanning, successfully
accomplished an exchange of the spouses' community interests in the income derived from the
other's separate property by each party specifically referring to the individual owner of the
separate property which generated the disputed income and correspondingly stating their intention
to characterize such income as the separate property of the owner of the separate estate that
generated it.
          Article XVI, section 15, as this court indicated in Fanning, allows both spouses and future
spouses to "partition" or "exchange" between themselves their individual interests in the
marriage's community property, which means that both spouses and prospective spouses may swap
and/or divide between themselves their interests in the community property acquired or to be
acquired during their marriage. Fanning, 828 S.W.2d at 140-141. However, in construing the
plain language of article XVI, section 15, we held that only spouses, not prospective spouses,
could recharacterize by mere agreement their community interests in the income to be derived
from each other's separate property as separate property, i.e., without a bilateral partition or
exchange. Id. at 141.
          Upon examining the wording of paragraph 6.01, this court found in Fanning that the
parties, as future spouses, were attempting in their prenuptial agreement to do what article XVI,
section 15, forbade them from doing: they were attempting by mere agreement, i.e., without a
partition or exchange, to recharacterize their individual community interests in the income derived
from their separate property as separate property. Id. While the two paragraphs in Fanning at
first glance appear to have accomplished the same goal in a similar manner, they nevertheless must
be treated differently because paragraph 6.01, unlike paragraph 6.02, referenced the language of
the proposed amendment to article XVI, section 15, which concerned the ability of spouses only
to recharacterize by mere agreement their community interests in the income to be derived from
the other's separate property. Fanning, 828 S.W.2d at 141-142; see also Dokmanovic v. Schwarz,
880 S.W.2d 272, 274 (Tex. App.—Houston [14th Dist.] 1994, n.w.h.). The Fannings did not
incorporate into paragraph 6.01 any language to reflect their intention, as prospective spouses, to
partition or exchange their community interests in the income to be generated by each other's
separate property. Fanning, 828 S.W.2d at 141-142. By referencing the language of the proposed
amendment concerning the ability of spouses, not prospective spouses, to partition or exchange
their community interests, the Fannings locked themselves into a construction of their agreement
that they were attempting to do as future spouses what only presently-married spouses could do,
i.e., recharacterize their community interests as separate property by mere agreement.
          Lynda contends that since her agreement with Charles is substantially similar to paragraph
6.01 of the Fannings' prenuptial agreement we are compelled to conclude that her prenuptial
agreement is likewise unconstitutional.


 However, their agreement does not even closely resemble
paragraph 6.01 of the Fannings' agreement. Instead, the Whites' agreement closely resembles the
prenuptial agreement the Fourteenth Court of Appeals found to be enforceable in Dokmanovic, 880
S.W.2d at 273. The parties in Dokmanovic, as prospective spouses, executed a prenuptial
agreement wherein they, among other things, exchanged their community interests in the income
to be derived from each other's separate property.


 Unlike the Fanning agreement, the parties in
Dokmanovic did not expressly reference the language in article XVI, section 15, concerning the
ability of only spouses, not future spouses, to recharacterize their community interests in the
income from separate property by mere agreement. See id. at 274-275. They, like the Whites,
simply used language which reflected an intention to define each other's separate property and to
characterize the income from that separate property as the owner's separate property. Therefore,
because we believe Dokmanovic was properly decided, we conclude that Fanning does not require
a decision in Lynda's favor.
       II.         Whether the Agreement Failed to Accomplish Either a Partition or an                     Exchange

          In answer to Lynda's second contention, we find that the Whites effected an exchange of
their community interests by listing the separate property they both brought into their marriage
and then specifying in the agreement that such separate property, including income derived
therefrom, would continue to belong to their separate estates after their marriage. We further hold
the language in the agreement, indicating the parties' intention to define the separate property each
brought into the marriage, does not mean that they did not intend to exchange their community
interests in the income derived from each other's separate estate. A delineation of each other's
separate property serves not only the purpose, as Lynda would have it, of assisting the parties in
tracing ownership upon dissolution of the marital estate, but allows the parties to determine the
source of the income derived from each other's separate property — an essential task for a
successful completion of an exchange by future spouses of each other's community interests in the
income derived from the other's separate property.
          Lynda points out that the words "partition" and "exchange" are nowhere to be found in the
Whites' agreement; however, we conclude that these words, while helpful, are not essential to
create a partition or an exchange. Charles and Lynda, in executing their prenuptial agreement,
disavowed any interests they might have in the income derived from the other's separate property
enumerated in the agreement.


 See Dokmanovic, 880 S.W.2d at 272 (holding statements in a
prenuptial agreement that income derived from the separate property of the parties would be
characterized as the owner's separate property accomplished a partition or exchange under article
XVI, section 15); see also Winger v. Pianka, 831 S.W.2d 853 (Tex. App.—Austin 1992, writ
denied) (an expression of intention by both parties not to hold any community property
accomplished an exchange as required by article XVI, section 15); Fanning, 828 S.W.2d at 142;
Dewey v. Dewey, 745 S.W.2d 514 (Tex. App.—Corpus Christi 1988, writ denied) (upholding a
prenuptial agreement virtually identical to the Whites', although the court did not rule on the
constitutional issue of partition or exchange); Williams v. Williams, 720 S.W.2d 246 (Tex.
App.—Houston [14th Dist.] 1986, no writ) (same). This mutual disavowal of interests effectively
accomplished an exchange between the two parties of their community interests in the income
derived from the other's separate property.
          Lynda makes the argument that the marked disparity in the value of the separate assets
brought into the marriage by the parties precludes any finding of a partition or an exchange. The
value of the interests exchanged, however, has no bearing upon a valid execution of a partition or
an exchange. See Chiles v. Chiles, 779 S.W.2d 127, 129 (Tex. App.—Houston [14th Dist.] 1989,
writ denied). Article XVI, section 15, requires only that the future spouses partition or exchange
their community interests in order to recharacterize what would be community property as separate
property; no mention is made of a requirement that the values partitioned or exchanged be of an
equal or even proportionate value, and we will not infer one.


 See id.; see also Hibbler v. Knight,
735 S.W.2d 924, 926 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Accordingly, we
conclude that an exchange was effected by Lynda and Charles in their prenuptial agreement. 
          In conclusion, we sustain Charles's point of error and render judgment in his favor.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and rendered
Opinion delivered and filed March 8, 1995
Do not publish