**Opinion issued November 26, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-12-00988-CV

—————————————

**LIUDMILA A. YURYEVA, Appellant**

**V.**

**DELOS N. MCMANUS, Appellee**

---

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 09DCV173747**

---

## MEMORANDUM OPINION

In this appeal of a judgment granting a final divorce decree, Liudmila A.

Yuryeva contends in five issues the judgment should be reversed and she should be

granted a new trial because (1) McManus was not a resident of Texas when filing

for divorce as required by section 6.301 of the Texas Family Code,[1] and therefore the venue was improper; (2) the trial court did not have jurisdiction to grant the divorce; (3) the trial court failed to award child support or to grant her a greater division of the estate despite McManus's alleged adoption of her son; (4) the trial court abused its discretion in dividing the marital estate; and (5) the trial court was biased against her. We affirm.

### Background

In 2001, Liudmila Yuryeva, a citizen of Belarus, and Delos McManus first met in Moscow. According to Yuryeva, a few days after meeting for the first time, McManus asked her to marry him. McManus filed an immigrant fiancé petition so that Yuryeva and her son, G.Y., could move to the United States. In support of the petition, McManus signed a U.S. Department of Justice Immigration and Naturalization Service "Affidavit of Support," guaranteeing that he would provide "an annual income at or above 125 percent of the federal poverty line" to support Yuryeva and her son. In 2005, McManus and Yuryeva were married in a legal ceremony in Fort Bend County, Texas. They lived in Texas, where McManus formed a business, leased a car, and made several investments. In 2006, the couple purchased a home in Sugar Land, Texas.

---

[1]     TEX. FAM. CODE ANN. § 6.301 (West 2006).

2

In 2008, McManus and Yuryeva entered a two-year lease for a second home in California. While Yuryeva and her son lived in the California house, McManus lived and worked in Oklahoma. McManus testified that he was unable to afford for Yuryeva to continue living in California and he tried to persuade her to return to their home in Sugar Land, Texas. Unable to persuade her to return, in August 2009, McManus filed a petition for divorce in Fort Bend County, Texas. Yuryeva continued to live in California, and McManus remained in Oklahoma.

In their pleadings, both McManus and Yuryeva stated that they had been domiciliaries of Texas for the preceding six-month period, residents of Fort Bend County for the preceding ninety-day period, and that there was no child "born or adopted of this marriage, and none is expected." In 2010, after a preliminary hearing but before the divorce trial, McManus granted his attorney, Don Schwartz, a durable power of attorney to sell the couple's house in Sugar Land. Schwartz sold the house and deposited the $84,706.71 proceeds from the sale with the Fort Bend County District Clerk.

Yuryeva had two different attorneys in this case. Each withdrew because of non-payment. At the time of trial, Yuryeva appeared pro se. At trial, McManus and Yuryeva each filed an inventory, appraisement, and list of claims related to the division of the marital estate. Yuryeva did not request the trial court to make findings of fact or conclusions of law regarding the division of their estate, other

3

than those contained in the divorce decree. In 2012, the trial court divided the marital estate, awarding to Yuryeva,

(1) All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment and personal property in the possession of the wife or subject to her control, including bedroom set and TV console bought by husband, sofa set, bedroom set, four TVs with stands, washer, dryer, nine-piece office set, camera and sewing machines with supplies and expensive materials.

(2) All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control, including rings, earrings, fashion designer clothing, bags and accessories, two laptop computers and printers.

(3) All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control.

(4) 2007 Audi motor vehicle, together with all prepaid insurance, keys, and title documents.

(5) Mila's Design, Inc. certificates of stock.

(6) The sum of $15,000 out of the funds on deposit with the Fort Bend County District Clerk's Office of which the District Clerk is ordered to pay said sum of $15,000 to Liudmila A. Yuryeva.

(7) Judgment against Delos N. McManus in the sum of $25,000 to be paid as hereinafter stated in this decree under paragraph H-4 for which let execution issue for nonpayment thereof.

The trial court awarded McManus the following:

(1) All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment and personal

4

property in the possession of the husband or subject to his control.

(2) All clothing, jewelry, and other personal property in the possession of the husband or subject to his sole control.

(3) All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control.

(4) All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment.

(5) All individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the husband's name.

(6) The 2005 GMC S1E Pickup motor vehicle, together will all prepaid insurance, keys, and title documents.

(7) The 2004 GMC Denali motor vehicle, together with all prepaid insurance, keys, and title documents.

(8) Rotary Steerable System, Inc. certificates of stock.

(9) Interest on funds on deposit with Fort Bend County District Clerk.

Additionally, the trial court determined that the remaining funds on deposit with the Fort Bend County Clerk, less the $15,000 awarded to Yuryeva, were

5

McManus's separate property. The divorce decree does not address the affidavit of support. Yuryeva timely appealed.

### Waiver of Divorce Suit Requirements

We first address Yuryeva's contention that the trial court erred in granting the divorce because McManus was not a resident of Texas when he filed for divorce as required by section 6.301 of the Texas Family Code and that the "venue" was improper.[2]

### A. Standard of review

A suit for divorce may be maintained if either the petitioner or the respondent (1) has been domiciled in the state for the preceding six months and (2) resided in the county of suit for the preceding 90 days.[3] The section 6.301 residency requirements are not jurisdictional; they are requirements necessary to bring a divorce action. *See Oak v. Oak*, 814 S.W.2d 834, 837–38 (Tex. App.—

---

[2] Yuryeva also argues that California, rather than Fort Bend County, was the proper "venue" for the divorce. *See* TEX. FAM. CODE. ANN. §§ 6.301–302 (West 2006). However, section 6.301 is not a venue statute per se—instead it "controls the right to maintain a suit." *Oak v. Oak*, 814 S.W.2d 834, 837 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Because she challenges both the residency and domiciliary requirements along with the court's authority to divide the estate, we construe her claim as both a challenge of the section 6.301 requirements and a personal jurisdictional challenge. *See* TEX. FAM. CODE. ANN. § 6.305 (outlining requirements for acquiring jurisdiction over nonresident respondent); *see, e.g. Dawson-Austin v. Austin*, 968 S.W.2d 319, 326–27 (Tex. 1998) (holding court did not have personal jurisdiction when petitioner was non-resident without sufficient contacts with the state).

[3] *See* TEX. FAM. CODE ANN. § 6.301 (establishing general residency rule for divorce suits).

Houston [14th Dist.] 1991, writ denied) (applying predecessor statute); *see also*

*Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.)

(applying Texas Family Code section 6.301).

**B.      Yuryeva admitted that domiciliary and residency requirements were met**

Yuryeva argues that when McManus filed for divorce, he was not living in

Texas, had claimed California residency, and provided false information to obtain

a Texas driver's license. Yuryeva also contends that she was not domiciled in

Texas and that she was a California resident. McManus responds that Yuryeva

waived her right to appeal the trial court's finding that the divorce residency and

domiciliary requirements were met. We agree.

A party's admission in her pleadings of her residence and domicile

constitutes a judicial admission and no additional evidence is necessary to prove

the admitted facts. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 207–

08 (Tex. 2000); *see also Dokmanovic v. Schwartz*, 880 S.W.2d 272, 277 (Tex.

App.—Houston [14th Dist.] 1994, no writ) (admission of residency in petition

sufficient to establish residency). Judicial admission of residency and domiciliary

requirements precludes a party from later appealing the sufficiency of the evidence

that such requirements were satisfied. *See Dokmanovic*, 880 S.W.2d at 277; *see*

*also Harmon v. Harmon*, 879 S.W.2d 213, 216–17 (Tex. App.—Houston [14th

Dist.] 1994, writ denied).

7

In his divorce petition, McManus stated that he had "been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period." In her counterpetition, Yuryeva responded that she also met the section 6.301 residence and domiciliary requirements. Yuryeva's pleadings constituted a judicial admission that she met the domiciliary and residency requirements. Therefore, Yuryeva waived her right to challenge whether the divorce suit requirements were met. *See* TEX. R. CIV. P. 120a(1); *see Dokmanovic*, 880 S.W.2d at 277.

Accordingly, we overrule her first issue.

## Jurisdiction

Second, Yuryeva argues that the trial court did not have personal jurisdiction because she was not a Texas resident when McManus filed for divorce. McManus argues that Yuryeva judicially admitted that the trial court had personal jurisdiction over the divorce. We agree.

### A. Standard of review

Challenges to a trial court's personal jurisdiction over defendants are reviewed de novo. *Aduli v. Aduli*, 368 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When a trial court does not issue findings of fact or conclusions of law, "we presume that all factual disputes were resolved in favor of the trial court's ruling." *Id*. However, if the record includes both the reporter's and

8

clerk's records, a party may challenge the legal and factual sufficiency of the trial court's implied findings of fact. *Id.*; *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We will uphold the trial court's judgment unless "it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Aduli*, 368 S.W.3d at 811–14 (citation omitted); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

## B. Yuryeva judicially admitted the trial court had personal jurisdiction over her

Yuryeva argues that she was not a resident of Texas when McManus filed for divorce and that the divorce should have been transferred to California.

If a respondent is not domiciled in, nor a resident of, Texas and wants to challenge personal jurisdiction, she must either make a special appearance or wait to collaterally attack the judgment when the moving party seeks to enforce the judgment.[4] *See Kramer v. Kramer*, 668 S.W.2d 457, 458 (Tex. App.—El Paso 1984, no writ). The special appearance must be filed before a motion to transfer venue or any other plea, pleading, motion, or filing that makes a general appearance.[5] A respondent waives her right to challenge personal jurisdiction if she makes a general appearance. *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304–05 (Tex. 2004).

---

[4] TEX. R. CIV. P. 120a.

[5] TEX. R. CIV. P. 120a(1).

In her counterpetition for divorce, Yuryeva did not make a special appearance or otherwise contest the court's personal jurisdiction. Nor did she offer evidence that the last marital residence was outside of Texas. *See, e.g. Aduli*, 368 S.W.3d at 813–17 (holding evidence sufficient that trial court had personal jurisdiction when last marital residence was in Texas). To the contrary, in her counterpetition, Yuryeva admitted that she was a Texas resident.

We hold that Yuryeva made a general appearance in the case and, therefore, she judicially admitted the court had personal jurisdiction over her.

We overrule Yuryeva's second issue.

## Child Support

Third, Yuryeva argues that the trial court abused its discretion in dividing the marital estate because it did not account for her son. McManus responds that because Yuryeva did not request the trial court to make findings of fact or conclusions of law, we should imply all necessary fact findings in support of the trial court's judgment and that the trial court impliedly found that he did not adopt Yuryeva's son.

## A. Standard of review

A trial court has broad discretion in dividing a marital estate. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Section 7.001 of the Texas Family Code provides that "[i]n a decree of divorce or annulment, the court shall order a

10

division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2006). We review the just and right division of community estates for abuse of discretion. *See Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974); *see also Frommer v. Frommer*, 981 S.W.2d 811, 814 (Tex. App.—Houston [1st Dist.] 1998, pet dism'd). A trial court abuses its discretion when it acts arbitrarily or unreasonably. *See Murff*, 615 S.W.2d at 698; *see also Frommer*, 981 S.W.2d at 814. We presume the trial court properly exercised its discretion in dividing the estate, unless the division is manifestly unfair. *Murff*, 615 S.W.2d at 699; *see also Frommer*, 981 S.W.2d at 814.

## B. The trial court did not err by not considering Yuryeva's son in dividing the marital estate

Yuryeva contends that the trial court's division of the marital estate failed to consider evidence that she had a son whom McManus adopted by marriage. Specifically, Yuryeva maintains that in dividing the estate, the trial court failed to include child support for her son because it harbored prejudice against immigrant children. McManus responds that Yuryeva waived her right to child support because she did not mention her son in her counterpetition. We conclude that Yuryeva's pleadings failed to request child support or an increased share of the marital estate to care for her son. Additionally, the evidence was factually

sufficient to support the trial court's conclusion that there were no children born or adopted of the marriage.

### 1.    Yuryeva failed to claim a child adopted or born of the marriage

A petition to divorce a married couple with a child must identify (1) the name and date of birth of the child, (2) the petitioner's relationship to the child, (3) the name of the alleged father, and (4) the requested action. *See* TEX. FAM. CODE. ANN. § 102.008 (West 2006) (outlining requirements for suit affecting parent-child relationship); TEX. R. CIV. P. 79. If a party does not request relief, the trial court does not have jurisdiction to grant it. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *see also Binder v. Joe*, 193 S.W.3d 29, 32–33 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Yuryeva maintains that she has a son "who under Federal Law of the USA qualified as an orphan" and that McManus adopted him by marriage and claimed him as a dependent for tax purposes. However, Yuryeva failed to include any reference to her son in her counterpetition. *See* TEX. FAM. CODE. ANN. § 102.008. To the contrary, she affirmed that "there is no child born or adopted of this marriage, and none is expected." Furthermore, Yuryeva did not reference specific costs or financial responsibilities associated with caring for her son. Because Yuryeva did not identify her son in her counterpetition, she judicially admitted that McManus did not adopt her son.

## 2. Yuryeva presented insufficient evidence of adoption by estoppel

Even though she did not raise the issue in her counterpetition, Yuryeva argues that the trial court erred in not making a finding that McManus became her son's father through adoption by estoppel. More specifically, she argues that McManus promised to adopt her son. *See Heien v. Crabtree*, 369 S.W.2d 28, 30 (Tex. 1963) (stating that living in a parent-child relationship is insufficient to prove adoption, but promises and conduct can warrant finding of adoption by estoppel); *see also Hickey v. Johnson*, 672 S.W.2d 33, 34 (Tex. App.—Houston [14th Dist.] 1984, no writ) (agreeing to adopt and claiming child as dependent on tax returns evidences adoption by estoppel). Yuryeva did not testify that the couple went through formal adoption proceedings. Nor did she present evidence that McManus planned to formally adopt her son. As evidence of McManus's disposition toward her son, Yuryeva points to an affidavit of support of her immigration to the United States signed by McManus. The affidavit includes McManus's sworn statement to support both Yuryeva and her son at or above 125 percent of the federal poverty line.[6] The affidavit does not, however, prove that McManus promised to or agreed to adopt Yuryeva's son. *See Hickey*, 672 S.W.2d at 34. Yuryeva also alleged that McManus claimed her son as a dependent on tax returns, but the accountant who

---

[6]     *See* Immigration and Nationality Act § 213A; 8 U.S.C. § 1183a (2006) (sponsoring individual must provide annual income not less than 125 percent of federal poverty line for duration of affidavit).

prepared the returns could not affirmatively testify that, by claiming him as a dependent, McManus was the legal father of Yuryeva's son.

Unlike *Hickey*, the record does not reflect that McManus promised to adopt Yuryeva's son. More importantly, Yuryeva did not ask the trial court to find adoption by estoppel. *See, e.g.*, *Hickey*, 627 S.W.2d at 34. Because Yuryeva did not provide sufficient evidence that McManus planned to adopt her son and did not request a finding of adoption by estoppel, we conclude that the trial court did not err by not including child support for her son. *See Hickey*, 672 S.W.2d at 34.

### 3. Yuryeva did not request enforcement of spousal and child support related to her immigrant status

Yuryeva also argues that the trial court erred in dividing the estate by not enforcing McManus's obligations under the affidavit of support he signed when Yuryeva and her son immigrated to the United States. McManus responds that Yuryeva "never raised any immigration issues for the Court to rule upon." We conclude that, by not requesting the court to enforce the affidavit, Yuryeva waived any right to have the trial court enforce the support obligation within the divorce decree.

The Immigration and Nationality Act ("INA") provides that when an immigrant is "likely to become a public charge," a qualified sponsor must complete an affidavit of support promising to support the sponsored immigrant "at an annual income of at least 125 percent of the Federal poverty line." Immigration

14

and Nationality Act (INA) § 213a; 8 U.S.C. § 1183a (2006). The INA specifies varying events that will terminate the support obligation, none of which are at issue in this appeal. INA § 213A; 8 U.S.C. § 1183a.

An affidavit of support executed as a part of the condition for an immigrant to enter the United States is an enforceable contract. *See In re Marriage of Kamali and Alizadeh*, 356 S.W.3d 544, 546–47 (Tex. App.—Texarkana 2011, no pet.). A sponsored immigrant may bring an action "in any appropriate court" against her sponsor to enforce his support obligations. INA § 213A; 8 U.S.C. § 1183a. In *Alizadeh*, the court of appeals held that a divorce decree could not limit the support required by an affidavit for sponsorship of an alien seeking residency in the United States. *Id*. at 545–46. The trial court acknowledged the existence of the affidavit of support, "but decreed that the obligation for support ended thirty-six months from the date of entry of the divorce decree." *Id*. at 545. The appellate court held that the divorce decree impermissibly limited the scope of sponsoring spouse's obligations. *Id*. at 546–47. The court reasoned that the affidavit of support is "a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant." *Id*. at 547 (*quoting Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1022–24 (N.D. Cal. 2008); s*ee also* 8 U.S.C. § 1183a(a)(1) (referring to affidavit "as a contract"); 8 U.S.C. § 1183a(e)(1) (stating sponsored immigrant may enforce affidavit in "any appropriate court."). Because the divorce

decree conflicted with the sponsoring spouse's affidavit obligations, the appellate court held that the sponsoring spouse was obligated to meet the terms of the affidavit, notwithstanding the divorce. *Id*. at 547–48.

Similarly, Yuryeva offered into evidence the affidavit of support detailing McManus's ongoing duty to support Yuryeva. She also testified that, in the months leading up to the divorce, McManus had not met his obligations under the affidavit. Furthermore, McManus's attorney conceded McManus's obligation and stipulated that "when [Yuryeva] came here, there was an agreement that they were to live together and [McManus] would support her." Unlike *Alizedah*, however, the trial court's divorce decree here did not reference or limit McManus's obligation under the affidavit of support. Yuryeva also did not request the court to enforce the affidavit when she filed her petition. Yuryeva, therefore, cannot complain of the trial court's failure to act on the affidavit.

Though she failed to request enforcement within the divorce decree, the pre-marital contractual obligation under the affidavit of support survives the divorce. *See Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1022 (N.D. Cal. 2008) (recognizing sponsored wife could pursue a post-divorce contract claim to enforce affidavit of support); *Moody v. Sorokina*, 830 N.Y.S.2d 399, 400–02 (N.Y. App. Div. 2007) (holding "the sponsored immigrant's right to support under the Form I–864 affidavit of support is unaffected by a judgment of divorce"). A sponsored

16

immigrant may bring an action to enforce an affidavit of support "in any appropriate court." 8 U.S.C. § 1183a; *see e.g. Varnes v. Varnes*, No. 13-08-0048-CV, 2009 WL 1089471, at *4–5 (Tex. App.—Corpus Christi Apr. 23, 2009, no pet.) (mem. op.).

We hold that the trial court did not abuse its discretion by not enforcing the affidavit within the divorce decree. *See Alizadeh*, 356 S.W.3d at 547–48. We overrule Yuryeva's third issue.

### Division of Marital Estate

In her fourth issue, Yuryeva contends that the trial court abused its discretion by unequally dividing the estate. She maintains that the trial court erred by accepting McManus's sworn inventory and appraisal of their property and not making findings of fact to support the division. McManus responds that Yuryeva presents no evidence that the trial court abused its discretion in dividing the estate.

**A.    Standard of review**

A trial court has broad discretion in dividing the marital estate. *Murff*, 615 S.W.2d at 698. When dividing a marital estate, the trial court shall divide the property in a manner "that the court deems just and right, having due regard for the rights of each party and any children of the marriage." *Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (citation omitted). A trial court abuses its discretion when the court acts arbitrarily or

17

unreasonably. *See Vannerson*, 857 S.W.2d at 668. We presume that the trial court exercises its discretion. *Murff*, 615 S.W.2d at 698–99; *Aduli*, 368 S.W.3d at 820

The division of a marital estate need not be equal; there must only be a reasonable basis for the division. *See Id*. A trial court may decree an unequal division of the estate when a reasonable basis for doing so exists. *Vannerson*, 857 S.W.2d at 669. We only consider whether the trial court abused its discretion in dividing the estate; we do not have authority to render judgment dividing the marital property. *See McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976); *see also Robles v. Robles*, 965 S.W.2d 605, 621–22 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). We conclude that trial court did not abuse its discretion in dividing the marital estate.

Yuryeva argues that the trial court awarded her property that has no value or does not exist. She complains that in crafting the decree, the trial court erroneously relied upon "false financial statement[s]" regarding the house in Sugar Land purchased during the marriage, McManus's separate property, and McManus's tax obligations. McManus contends that we are required to imply all necessary findings of fact to uphold the division of the marital estate, there is sufficient evidence supporting the trial court's division of the estate, and the trial court did not abuse its discretion.

Upon a request, a trial court is required to make findings of fact or conclusions of law regarding the evidence supporting its division of a martial estate. *See* TEX. R. CIV. P. 296–99a, 306c; TEX. FAM. CODE. ANN. § 6.711 (West 2006). Yuryeva did not request the trial court to make findings of fact or conclusions of law. *See* TEX. FAM. CODE ANN. § 6.711. When the complaining party does not request findings of fact, we presume that the trial court's judgment implies all findings of fact necessary to support it. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *see Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Even though a party fails to request findings of fact, she may still appeal the factual sufficiency of the property division. *Vannerson*, 857 S.W.2d at 668; *see also Sibley*, 111 S.W.3d at 52. Under that circumstance, we consider only the evidence "most favorable to the issue and [] disregard entirely that which is opposed to it or contradictory in its nature." *Worford*, 801 S.W.2d at 109; *see also Smith v. Smith*, 22 S.W.3d 140, 150 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We must affirm a judgment if it can be upheld on any legal theory supported by evidence. *Smith*, 22 S.W.3d at 149–50; *see also Gainous*, 219 S.W.3d at 103.

Yuryeva argues that the trial court inequitably divided the estate. Specifically, she maintains that the court did not grant her the entire proceeds from the sale of the house located in Sugar Land. While the divorce was pending,

19

McManus's attorney sold the couple's Sugar Land house and deposited the $84,706.71 in proceeds from the sale with the District Clerk. Yuryeva argues that the house was her separate property and that she should have received the proceeds from the sale. Yuryeva, however, presented no evidence that the house was her separate property or that she should have received all of the profit from its sale. In the final decree, the trial court divided the property according to the submitted inventories and reconciled the different values reported in those inventories. *Gainous*, 219 S.W.3d at 103. We presume that the court made all necessary findings of fact, relying on the party's evidence, including the inventories of community property that Yuryeva and McManus both presented to the court. *See Gainous*, 219 S.W.3d at 103. We conclude that the trial court did not abuse its discretion in dividing the profits from the sale of the house. *Id*.

Yuryeva also argues that McManus falsified financial records and that the court improperly relied on those documents in dividing the estate. Yuryeva, however, presented no evidence to support her allegations of fraud. Based on the record evidence, we presume the trial court made an implied finding of no fraud. We hold that the trial court did not err in dividing the marital estate.

We overrule Yuryeva's fourth issue.

## Trial Court's Alleged Prejudice

In her fifth issue, Yuryeva contends that McManus's attorney "intentionally and know[ingly] suppl[ied the trial] court with false financial statement[s]," signed an unidentified "frivolous pleading," committed legal malpractice, and violated the Texas Disciplinary Rules of Professional Conduct. Based on these alleged errors, Yuryeva contends that the trial court should be reversed and she should be granted a new trial.

Yuryeva, however, fails to identify any specific misconduct during the trial by McManus's attorney or identify any evidence in the record of any misconduct by McManus's attorney. She further complains that the trial judge did not "care" that McManus's attorney falsified evidence. Lastly, she argues that the trial court was biased against her based on his ruling about her son and the division of the estate. We have previously disposed of Yuryeva's contentions regarding child support and the division of the estate. We find no evidence in the record to support her allegations of misconduct or bias.

We overrule Yuryeva's fifth issue.

## Conclusion

We affirm the trial court's judgment.

Harvey Brown

Justice

Panel consists of Justices Jennings, Sharp, and Brown.